OLD SOUTH SOCIETY *vs.* WILLIAM L. WAINWRIGHT & another.

Suffolk. March 8. — April 1, 1886. W. ALLEN & HOLMES, JJ., absent.

A deed described the land conveyed as bounded northerly on a lane in front, easterly on an alley way and other land owned by the grantor, and southerly and westerly by the lands of persons named. The deed gave the measurements of all the lines, and described the premises conveyed as extending over said alley way at the height of eight feet, and across the same "until it comes against another house of" the grantor. It gave also the right of passing up and down the alley way to a vault at the head thereof (the southerly end), and a privilege in the pump in the street. It appeared that the measurements excluded the alley way ; that the grantor's house on the westerly side of the alley way only extended as far northward as the northerly boundary of the land conveyed according to the measurement of the grantee's easterly line, but that the grantor's lot extended northward of his house, and that he owned a small strip in front of the alley way ; and that the pump was either on this strip or in front of the land conveyed. *Held,* that this small strip northward of the alley way did not pass by the deed.

TORT, in two counts, for breaking and entering the plaintiff's close in Boston. The second count, which only need be mentioned, included in its description the parcel of land marked A B C D on a plan used at the trial.

Trial in the Superior Court, before *Gardner,* J., who reported the case for the determination of this court, in substance as follows :

The plaintiff now owns the land marked Ridgway on the plan, and the defendants that marked Campbell. The trespass complained of in the second count was the taking down by the defendants of a high board fence, put up by the plaintiff on the day before such taking down along the line A D, about four inches from the wall of the defendants' building, and which obstructed the light from a large window on that side of their building. A copy of the plan is printed in the margin.*

The plaintiff claimed title to the land in question by deed.

It appeared that, in 1795, George R. Minot owned the land described in the second count, the land in the alley way, and all the land on both sides of said alley way, on the south side of Spring Lane, from Cornhill, now Washington Street, to Joyliffe's Lane, now Devonshire Street.

---

*

On June 30, 1795, said Minot conveyed to George Ridgway, his heirs and assigns, "a certain tenement or dwelling-house and land situated in Spring Lane in Boston, and bounded as follows: northerly on the lane aforesaid in front, there measuring on the said lane sixteen feet; easterly on an alley way and other land owned by said Minot, forty-two feet eight inches; southerly on land of the Old South Church, there measuring sixteen feet, and westerly on another tenement and land sold by said Minot to Nathaniel Balch, Esq., there measuring forty-three feet six inches, and extending over said alley way at the height of eight feet, and across the same, three feet and eight inches, until it comes against another house of said Minot occupied by Mr. James Campbell, with the privilege of passing up and down said alley way as far as the same now extends (viz. to the necessary) in common with the said Minot, his heirs and assigns, each having a right to continue the necessary or vault at the head of the alley as the same now stands, keeping the same in proper order and repair. . . . . Also with a privilege in the pump in the street, said Ridgway paying one quarter part of all future repairs and charges thereof, and of the well and other privileges and appurtenances to the premises in any wise belonging."

All the intermediate deeds, from Ridgway to the plaintiff inclusive, contain substantially the same description of the land as to bounds, distances, and measurements as in said deed of Minot to Ridgway, and the same language as to said rights in the alley way, and to the pump and well.

On July 30, 1800, said George R. Minot conveyed to James Campbell, and his heirs and assigns, "a certain dwelling-house and land situated on Spring Lane, in said Boston, wherein the said Campbell now dwells, and bounded and measuring as follows, viz.: northerly by said street, twenty-one feet more or less; easterly by other land of said Minot, there measuring fifty-five feet nine inches, more or less; southerly by land of Ebenezer Dorr, there measuring about twenty-one feet, and by land of the Old South Church, about three feet more or less; westerly by land lately sold by said Minot to George Ridgway, deceased, and now owned by John Driscoll, there measuring to the front of said Driscoll's home forty-three feet more or less, then making a jog and measuring on a northerly boundary the width of an

alley way, as the same now runs, about three feet, then running to the first-mentioned bound on said street, and measuring from said jog thirteen feet three inches, more or less, reserving unto the heirs or assigns of said Ridgway the privilege of passing up and down said alley way as far as the same now ·extends, viz. to the necessary, and of continuing said necessary or vault, keeping the same in proper order and repair, and of building over said alley way at the height of eight feet, as explained in the said Ridgway deed, June 30, 1795; also a privilege in the pump in the street, said Campbell paying one quarter part of all repairs of said pump and the well, together with all other privileges and appurtenances to the granted premises belonging."

All the intermediate deeds, from Campbell to Susannah Lambert, under whom the defendants claim, describe the land, and the rights and privileges to the well and pump, in the same language substantially, with all the same bounds and measurements, as in the said deed of Minot to Campbell.

The said pump and well mentioned in said conveyances existed down to about the time of the introduction of Cochituate water in Boston, in 1847, and were either in front of the northerly boundary of the land described in the deed of Minot to Ridgway, or in the small piece described in the second count. The distances on said plan are taken from the deeds herein described.

In order further to show the situation of the street or lane, and the lots of land, and of the jog, alley way, &c., the defendants put in evidence the following deeds:

1. A deed of said Minot to one Balch, dated August 11, 1794, of a parcel · of land next westerly of that afterwards conveyed to Ridgway, containing the following description: " westerly by land of the Old South Church fifty-three feet; northerly by said lane nine feet five inches; then making a jog and running southerly seven feet two inches; then northerly by the street again nine feet two inches; easterly by the partition wall and fence, which divides the said granted premises from another tenement and land under the same roof, belonging to said Minot, as the said wall and fence now stand, forty-four feet five inches; and southerly by the land of the said church eighteen feet one

inch more or less, with a privilege in the pump and well of water standing in said lane, paying one quarter part the repairs thereof, and all other privileges and appurtenances to the premises belonging."

2. A mortgage, dated December 15, 1766, from Stephen Minot to the ministers and deacons of the Old South Church, of a lot of land being part of that subsequently conveyed by George R. Minot to Campbell. This mortgage described the lot as follows: " bounded northerly by said Spring Lane, there measuring twenty-one feet six inches; easterly by the tenement and land now in the occupation of said Stephen Minot, there measuring fifty-six feet ten inches; southerly on land of James Boutineau, Esq., there measuring twenty feet two inches; and westerly on Spring Lane, and the house and land now improved by said Whittemore, there measuring fifty-six feet."

George R. Minot acquired his title to all said lands under said mortgage, and as heir at law of said Stephen Minot.

None of the parties hereto have paid taxes on said small piece. It has for much of the time remained open as it now is, apparently a part of the street.

On the construction of said three deeds and mortgage, the court ruled, as matter of law, that George R. Minot conveyed the title in the land in controversy to said Ridgway, by deed of June 30, 1795; and, on said ruling, found for the plaintiff on the second count, and assessed damages in the sum of $1. If said ruling was correct, judgment was to be entered for the plaintiff on the second count; otherwise, a new trial to be had on that count.

*J. B. Richardson,* for the defendants.

*L. M. Child,* for the plaintiff.

FIELD, J. There is not sufficient evidence to warrant the ruling that George R. Minot, by his deed to George Ridgway dated June 30, 1795, intended to convey any land not a part of Spring Lane lying north of the northerly boundary, which is described as " northerly on the lane aforesaid in front, there measuring on said lane sixteen feet." The width of the lot is sixteen feet, with an extension " over said alley way at the height of eight feet, and across the same, three feet and eight inches, until it comes against another house of said Minot," with the

privilege of using the alley way in common with said Minot, his heirs and assigns, to the necessary or vault at the head of the alley. It is unnecessary to determine whether this deed conveyed the fee to the centre line of the alley way, or to the easterly or westerly side of it, because there is no right granted to make the extension over the alley way continue northerly beyond the northerly boundary of the dwelling-house and land as conveyed. The grant of " a privilege in the pump in the street," which was situated either northerly of the north boundary of the dwelling-house and land, or of this line extended across the alley way, implies that the land in which the pump and well were situated was not granted.

The argument is, that, as the lot is bounded " easterly on an alley way and other land owned by said Minot," the lot must have extended on the easterly side north of the alley way, as the alley way ceased when the northerly boundary of the house was reached, and therefore that the lot conveyed must have included a parcel of land, at least as wide as the alley way, bounded easterly on Minot's other land, and extending northerly as far as his other land extended. If these words could otherwise have no intelligible meaning, still it would be difficult to define all the boundaries of the land included in this description. But these words as applied to the land may have an intelligible meaning without extending any part of the lot conveyed to Ridgway northerly beyond the northerly line of sixteen feet on the lane continued across the alley way. There was a vault or necessary on Minot's land at the head of the alley and across it, and, whether Ridgway's easterly line ran through the centre of the vault or on the easterly or westerly side of it, the lot conveyed, so far as the vault extended, would be bounded easterly on other land owned by said Minot. Again, the lot was conveyed with a right of extension over the alley way at the height of eight feet, " until it comes against another house of said Minot," and by the deed it may have been intended that the lot on the easterly side should be bounded by the alley way for eight feet from the surface, and that above this it should be bounded by the other land owned by said Minot, which was the house and land for whose use a right in the alley way and vault was reserved in the deed.

The deed of Minot to Campbell of the lot on the east, dated July 30, 1800, cannot be used to detract anything from Minot's previous deed to Ridgway, but it may perhaps be used to show the buildings on the land at the time of the latter conveyance, and the condition of it. This deed describes the lot conveyed as bounded " westerly by land lately sold by said Minot to George Ridgway deceased, and now owned by John Driscoll, there measuring to the front of said Driscoll's home [house] forty-three feet more or less, then making a jog and measuring on a northerly boundary the width of an alley way, as the same now runs, about three feet, then running to the first-mentioned bound on said street, and measuring from said jog thirteen feet and three inches, more or less." If land north of the alley way had been previously conveyed to Ridgway, these last two lines would naturally have been described as bounded on land conveyed to Ridgway. The description of the lot in the mortgage given by Stephen Minot, dated December 15, 1766, which is in part the same land conveyed to Campbell by George R. Minot, bounds it " westerly. on Spring Lane, and the house and land now improved by said Whittemore," which indicates, as all the deeds, including that of Minot to Balch, indicate, that the lot of land described in the second count of the plaintiff's declaration was considered to be a part of Spring Lane, where were a pump and well from which the abutters had the right to draw water. If the fee in Spring Lane to the centre line is in the abutters respectively, still the plaintiff would have no right to maintain the fence which the defendants took down, because Spring Lane is a public way.

In accordance with the terms of the report, the finding on the second count must be set aside, and a new trial ordered on that count. *So ordered.*