OLD SOUTH SOCIETY *vs.* WILLIAM S. WAINWRIGHT & others.

Suffolk.    January 22, 25, 1892. — March 2, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Disseisin — Adverse Possession — Evidence.*

A lot of land was thirteen feet long and about three feet eight inches wide, and a second lot, directly south of it, was an alleyway forty-three feet eight inches long and three feet eight inches wide, located between the buildings owned by the respective parties.    The fee of the last strip was admitted to be in the tenants, unless the demandant had acquired a title by disseisin.    This last strip was used as a passageway before 1800, and the deed in that year to the tenants' predecessors in title conveyed subject to a right of way previously created by a deed for the benefit of the demandant's estate.    About 1844, the demandant built a portico in front of a chapel on its lot, and an iron fence on the southerly line of a lane and the easterly and westerly lines of its lot, and set up an iron gate from the corner of its lot across the first mentioned strip, at the side of the lane, swinging against the tenants' building, thus cutting off the entrance to the

passageway between the buildings, and another iron gate at the south end of the way. This front gate was kept locked by the sexton of the demandant's chapel until about 1860, when it was taken down and the strip thirteen feet long was kept open, and the passageway between the buildings was built over by the tenant of the premises owned by the present tenants, and was included within his building, he having first hired of the demandant the privilege so to include it, and at the same time to close up windows in the chapel opening upon it, and to build into the wall of the chapel. This use of the passageway continued until 1881, when the building over it was torn down, since which time there has been no actual use of it. There was a privy across the passageway at the southerly end, and the way was used by the occupants of the two adjacent estates for access thereto. The deed of 1800 showed that the way terminated at the privy, and the rights reserved to the owners of the demandant's estate, which were to be exercised in common with the owners of the tenants' estate, were to pass up and down the passageway as far as the privy, and to continue the latter and keep it in repair. Long before the erection of the gate, in 1844, the privy had been discontinued, and during all the time that the demandant maintained a gate the evidence indicated that it was not with a view to put the property to any use, but merely to keep it in a decent condition. There was little or nothing to indicate that the gate was not as serviceable to the tenants as to the demandant, or that the tenants had reason to suppose that it was kept there for the purpose of appropriating the way to the demandant's use, or of maintaining a possession to the exclusion of the tenants, or of doing anything which was not as beneficial to the tenants as to the demandant. The period of the alleged disseisin was less than twenty years; and the only other possession on which the demandant relied was that of the occupant of the tenants' building while he was paying rent for the privilege of including the passageway within his dining-rooms, and closing up the windows of the chapel on that side and building into the wall of the chapel, he also having the privilege from the demandant and paying rent therefor. *Held*, that there was no evidence that the demandant had acquired a title by disseisin against the owner of the fee.

The facts relied on to show adverse possession of a strip of land thirteen feet long and about three feet eight inches wide were the maintenance of a gate by the demandant at the line of a lane at one end of the strip, from 1844 to about 1860, and the maintenance of a window by the tenants' tenant extending out from the building over most of the space from about 1866 to 1876. The demandant never had any title to this strip, and the rights of the demandant and tenants in it were equal, viz. to use it for access to a pump on or near it, which had been taken up before the year 1844, when the demandant built an iron fence on the southerly line of the lane aforesaid and the easterly and westerly lines of its lot, which fence did not enclose the strip in question, the strip being left as a mere continuation of a passageway between the buildings out to the line of said lane. The maintenance of the gate was for the benefit of all parties, and there was little or nothing to indicate that the tenants had reason to suppose that it was kept there for any purpose which was not as beneficial to them as to the demandant. The approach to the passageway was open and not used by the demandant from 1860 until about 1866. *Held*, that there was no evidence to warrant the jury in finding that the rights of the parties under their deeds had been changed by adverse possession of any part of the premises.

At the trial of a writ of entry, communications from third persons, and mere records of the doings of the demandant corporation in regard to the property, cannot be received as evidence in its favor.

WRIT OF ENTRY, to recover two lots of land in Boston, one about forty-two feet long and three feet eight inches wide, on the easterly side of the demandant's estate on Spring Lane, between that and the estate of the heirs of Susanna Lambert, and the other of the same width, immediately in front of the first mentioned strip, thirteen feet three inches long, reaching from the first strip to the line of the Susanna Lambert estate on said lane, according to the accompanying plan.

LAND OF OLD SOUTH CHURCH.

It was admitted that the heirs of Susanna Lambert owned and now own the first mentioned strip of land (marked A) in fee (over which the demandant once had a right of passage), unless the demandant had got it by adverse possession; but it was contended by the latter that it had had exclusive adverse possession of the same for over twenty years, and that therefore, by the statute of limitations, the tenants were estopped from disputing its title.

It was further contended by the demandant, that it had, by exclusive continuity of adverse possession, acquired the strip of land in front of the aforesaid passageway B A C D, measuring thirteen

feet, and of the same width. The tenants claimed to own the fee of said passageway C D E F, and the right to use it. They claimed no fee in this thirteen-foot strip B A C D, except that right to pass over it, and the right also which they had in common with the public, and the further right of opening and abutting upon this strip, and having windows thereupon, and denying the right of anybody to build upon or occupy the same, because it was a public highway which, by its peculiar situation, conferred benefits upon them. The demandant put in the deed of Minot to Campbell, dated July 30, 1800, and the deed of John Driscoll to the Old South Society, dated April 15, 1819.

For the purpose of showing the title by limitation, the demandant offered communications from third persons, and mere records of its corporate doings from time to time in regard to the property; which were excluded, and the demandant excepted.

After the conclusion of the demandant's case, the court ruled that there was not sufficient evidence to warrant finding twenty years' adverse possession of either of the parcels of land, and directed a verdict for the tenants; and the demandant alleged exceptions.

*L. M. Child*, for the demandant.

*J. B. Richardson*, for the tenants.

KNOWLTON, J. The principal exception in this case was to the ruling that there was no evidence which would warrant a verdict for the demandant. The writ describes two lots of land adjacent to each other, which should be considered separately. The first, marked on the plan B A C D, is thirteen feet long and about three feet eight inches wide; and the second, directly south of it, designated as C D E F, is an alleyway forty-three feet eight inches long and three feet eight inches wide, between the buildings owned by the respective parties. The fee of the last strip is admitted to be in the tenants, unless the demandant has acquired a title to it by disseisin. It was used as a passageway previously to the year 1800, and the deed of it to the tenants' predecessors in title, made in that year, conveyed it subject to a right of way in it which had previously been created by a deed for the benefit of the estate now owned by the demandant. In this part of the case the question is, whether there is evidence that the demandant has acquired a title by disseisin against the owner of the fee.

The most that the jury would have been warranted in finding from the evidence is, that about the year 1844 the demandant, then having a chapel on its lot, built a portico in front of it, and an iron fence on the southerly line of Spring Lane and the easterly and westerly lines of its lot, and set up an iron gate extending from the corner of its lot across the strip B A C D, at the side of Spring Lane, swinging against the tenants' building, thus cutting off the entrance to the passageway between the buildings, and another iron gate at the south end of the way; that this front gate was kept locked by the sexton of the demandant's chapel until about the year 1860, when it was taken down and the strip thirteen feet long was left open, and the passageway between the two buildings was built over by the tenant of the premises owned by the present tenants, and was included within his building, he having first hired of the demandant the privilege so to include it, and at the same time to close up windows in the chapel opening upon it, and to build into the wall of the chapel. This use of the passageway continued until 1881, when the building over it was torn down, since which time there has been no actual use of it. The recollection of the demandant's witnesses differed greatly as to some of these matters, and much of their testimony was far more favorable to the tenants than the above statement, both in regard to the length of the periods of occupation on which the demandant relied, and to the nature of the occupation of the respective parties. We have intended to give above the facts most favorable to the demandant of which there was any evidence, although as to some of them the weight of the evidence would call for a very different finding. The bill of exceptions refers to 141 Mass. 443, where is found the report of a former case between the same parties, giving the contents of deeds introduced at this trial whose contents are not stated in the bill of exceptions, and in other respects showing more fully than would otherwise appear the condition of the record title.

It was an undisputed fact that there was a privy across the passageway at the southerly end of it, and that the way was used by the occupants of the two adjacent estates for access to the privy. The deed of July 30, 1800, from Minot to Campbell,

shows that the way terminated at the privy, and that the rights reserved to the owners of the demandant's estate were to pass up and down the passageway as far as the privy, and to continue the privy and keep it in repair. These rights were to be exercised in common with the owners of the tenants' estate. Under these deeds neither of the parties could deprive the other of the right to use this strip as a passageway, and neither of them could use it for any purpose which would interfere with convenient use of it by the other. Long before the erection of the gate, in 1844, the privy had been discontinued, and neither party had occasion any longer to use the way for the purpose for which it was intended. Nor was there apparently any other lawful use, of any value, to which it could be put by either of them without interfering with the legal rights of the other. It was situated within a few steps of Washington Street, in the most crowded part of what had then become a large city, where throngs were passing by night and by day, and there is much evidence that so long as it remained open it was used by trespassers for purposes which made it offensive. It was important to the owners and occupants on each side of it that it should be kept clean, and the demandant, having erected a fence along the front of its premises, and on the sides of its lot from Spring Lane back to the corners of its chapel, was acting in the interest of both parties when it also put an iron gate across to the tenants' building, with a lock upon it. The relations of the demandant and the tenants, although one party owned the fee and the other only an easement, were, in respect to the use of the passageway, closely analogous to those of tenants in common. The demandant, under its deed, could pass up and down the passageway, and could do no more. The owner of the fee could use it for no other purpose than passage without interfering with the right of the demandant to have it unobstructed. " It is the general rule of law that the possession of one tenant in common, though exclusive, being consistent with the right of his cotenant, does not amount to a disseisin of the cotenant, and that an ouster, or some act which the law deems equivalent to an ouster, is necessary to constitute a disseisin of his cotenant by a tenant in common." *Bellis* v. *Bellis*, 122 Mass. 414, 415, and cases cited. Now, during all the time that the demandant maintained a gate

at the entrance of the passageway, the evidence indicates that it was not with a view to put the property to any use, but merely to keep it in a decent condition.   There is evidence that some boxes or other rubbish were thrown in there at some time by the occupants of the tenants' premises, and at some other times by the sexton of the chapel; but this was plainly irregular and unusual.

If the effect of the maintenance of the gate had been to exclude the tenants from any use which they would otherwise have made of the property consistently with the demandant's rights, there would have been evidence of a disseisin.   But there is little or nothing to indicate that the gate was not as serviceable to the tenants as to the demandant, or that the tenants had reason to suppose that it was kept there for the purpose of appropriating the way to the demandant's use, or of maintaining a possession to the exclusion of the tenants, or of doing anything which was not as beneficial to the tenants as to the demandant.   There is ground for a strong argument that under the circumstances of this case a title by disseisin could not be acquired by the maintenance of this gate, however long continued.

But it is unnecessary to decide whether there was a disseisin which, at the end of twenty years, would have ripened into a title.   For if this time could be reckoned, the demandant would still fail.   It was less than twenty years; and the only other possession on which the demandant relies is that of the occupant of the tenants' building while he was paying rent for the privilege of including the passageway within his dining-rooms, and closing up the windows of the chapel on that side, and building into the wall of the chapel.   But that was not a disseisin of the tenants.   It was an occupation by the tenants' tenant, who could not lawfully have torn out the wall of the building so as to enclose this additional space, except under authority of the tenants.   His hiring the privilege from the demandant, and paying rent, was entirely consistent with an exercise by the demandant of no more than its legal right.   No one could close up the passageway, much less build into the wall of the chapel, without obtaining the right from the demandant; and a lease for that purpose was natural and proper.   On the

other hand, it must be presumed, in the absence of anything to show the contrary, that the removal of a part of the wall of the tenant's building by the occupants of it, and the enclosure of this additional space, were authorized by the owners, either by the terms of their lease or otherwise, and the possession of the passageway under such circumstances would be a joint possession, and not a disseisin of either party.

The facts relied on to show adverse possession of the strip B A C D are the maintenance of the gate, at the line of Spring Lane, from 1844 to a time not later than 1860, and the maintenance of a window by the tenants' tenant extending out from the building over most of the space from about the year 1866 to about the year 1876. It is conceded that the demandant never had a title to this strip by deed, nor any right in it, except the same that the tenants and their predecessors in title had, namely, a right to pass over and use it freely for access to the pump which stood on or near it. The rights of the parties in it were equal. But the pump had been taken up and discontinued prior to the year 1844, when the demandant fenced in the land in front of its chapel. In building the fence the demandant did not enclose this lot with its own land, and after the enclosure this strip was left as a mere continuation of the passageway between the buildings out to the line of Spring Lane. All that has been said in reference to the maintenance of the gate in connection with the original passageway is equally applicable to this strip, and whether the closing of the approach to the passageway is any evidence of adverse possession against the tenants, we do not deem it necessary to decide.

But if there is such evidence, it is an admitted fact that the place was open and was not used by the demandant from the year 1860 until about the year 1866. If there were a possession before and after this last mentioned period, the continuity of possession would be broken, so that a title would not be acquired.

It is not necessary to consider whether the permission to maintain a window there, and to enjoy an easement of light and air over the demandant's land, after 1866, would warrant a jury in finding a disseisin by the demandant while the window was maintained; for it was removed after the expiration of about

ten years, and it is admitted that there has been no adverse possession since.

There was no evidence to warrant the jury in finding that the rights of the parties under their deeds have been changed by adverse possession of any part of the premises, and the ruling at the trial was correct.

Communications from third persons, and mere records of the doings of the demandant corporation in regard to the property from time to time, could not be received as evidence in its favor; and if any part of the evidence excluded was competent, the admission of it could not have changed the result.

*Exceptions overruled.*