LAURA M. MERRY *vs.* HARRY W. PRIEST & another.

Plymouth. May 13, 1931. — September 14, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Way*, Private. *Res Judicata. Equity Pleading and Practice*, Decree. *Evidence*, Presumptions and burden of proof. *Land Court*, Findings by judge.

The owner of certain land, over which and also over land on one side of it the owner of land on its other side claimed a right of way to a street, erected gates across the way. The gates were torn down in 1912 on the side of the dominant tenement by one who had no title in the dominant tenement, and the owner of the servient tenement brought a suit in equity to restrain him from interfering with such gates. A master's report therein was favorable to the defendant, but the report never was confirmed. A month after the master's report was filed, the owner of the servient tenement filed a petition in the Land Court for registration of his title. The owner of the dominant tenement appeared and filed an answer claiming a "right of way over the premises"; and a year later brought a suit in equity against the owner of the servient tenement relating to the controversy as to the right of way. In each of the suits in equity and at the same time, twelve years after the second suit was begun, a final decree was entered that the bill be "dismissed under order of court." Three years later the defendant in the first suit in equity received a deed of the dominant tenement and was permitted to file an answer in the proceedings in the Land Court claiming a "free and open right of way," and he contended that by reason of the proceedings in the suit in equity against him the owner of the servient tenement had no right to maintain gates across the way. *Held*, that

(1) The question of the petitioner's right to maintain such gates was not *res judicata;*

(2) Nothing in the proceedings in the first suit in equity barred the plaintiff therein, petitioner in the proceedings in the Land Court, from insisting upon a right to maintain gates across the way.

A petitioner in the Land Court sought registration of his title free from encumbrance. An adjoining owner claimed a "right of way over the premises," and, after his death, his successor in title was permitted to file an answer claiming a "free and open right of way." The report of the examiner was favorable to the petitioner. The deed to the petitioner conveyed the premises subject to existing rights of way. The deed to the respondent was silent as to appurtenant rights of way. No deed creating the right of way was shown. There had never been a common owner of the premises of the petitioner and of the respondent. It was admitted that any right rested upon prescription. The judge found that a right of way existed, ruled that "as the whole claim of the respondent" was "a matter of affirmative proof, the burden" was "on that side of the case," and that such burden had "not been sustained as to a way free of gates or bars," and, "on all the evidence, regardless of burden of proof rules," found that "said way as originally prescribed was subject to the right of the servient estate owner to maintain gates or bars at either end." No evidence was reported. Upon an appeal by the respondent, it was *held,* that·

(1) The ruling as to burden of proof in the circumstances was right;

(2) Even if such ruling were wrong, no ground for vacating the decision appeared, since the judge's finding in the circumstances must stand.

PETITION, originally filed in the Land Court on October 28, 1912, by Hortense E. Merry, for registration of the title to certain land in Duxbury "known as the 'Sprague Lot,' containing fifty and six tenths acres, more or less."

On May 6, 1913, Josephine A. Priest filed an answer setting up that she had "a right of way over the premises." On January 15, 1931, by leave of court, Harry W. Priest and Mary B. Sands filed an answer alleging that they had "free and open right of way leading from West Street to their property over the premises described in the petition," and that their right to such way had been judicially established in proceedings in the Superior Court.

On February 12, 1931, the petitioner, averring that his wife was Laura M. Merry and that he had conveyed the premises to her in December, 1928, prayed that she be substituted as petitioner, and the petition was allowed.

The petition was heard by *Smith*, J. There was no report of the evidence. The respondents Harry W. Priest and Mary B. Sands asked for the following rulings:

"1. Upon all the evidence, the petitioner is entitled to registration only subject to the free and unobstructed right of way of the respondents, as shown on the plan.

"2. Upon all the evidence, the petitioner has failed to show a right to erect or maintain gates, bars or other obstructions at either end of the respondents' right of way across the land sought to be registered.

"3. The burden of proof is upon the petitioner to show that the land sought to be registered is unencumbered by the right of way claimed in the respondents' answer.

"4. The burden of proof is upon the petitioner to establish any right to erect gates, bars or other obstructions across said right of way.

"5. The petitioner has failed to sustain the burden of proof in either of the foregoing instances.

"6. . . . [The suit in equity,] Hortense E. Merry (the present petitioner) *vs.* Harry W. Priest (one of the present respondents) is *res judicata* against the right of the petitioner to assert any claim for registration of the land herein involved, except as subject to a free, open and unobstructed right of way across the same.

"7. In the circumstance of the master's report followed by the docket entry, by order of the court, of 'Bill Dismissed' . . . [that suit] constitutes a final determination of the rights therein involved.

"8. The right to erect or maintain gates and bars across a free and unobstructed right of way can not be acquired by prescription, except by continuous unopposed and adverse maintenance thereof for the period of twenty years.

"9. The erection or maintenance of gates and bars across a right of way upon land adjacent to the petitioner's by owners thereof not in privity with the petitioner, establishes no right of the petitioner therein."

The judge filed a decision containing the following findings and rulings among others:

"This is a petition to register the title (free of encum-

brances) to a land locked parcel of real estate in Duxbury containing about fifty acres. The respondents claim to own land adjoining on the northwest side, which has been lived on and used to some extent as a farm for many years. The examiner's report is favorable. The respondents claim a right of way appurtenant to their land running northeast over locus to a public way called West Street. Other land lies between said street and locus, the title to which I have no jurisdiction to consider in these proceedings.

"The evidence in this case disclosed a veritable pot-pourri of litigation over two simple issues, viz.: — has the respondents' land a right of way over the petitioner's land; and, if yes, is it an unobstructed way or is it subject to the right of the servient estate to maintain gates or bars at either end? . . . [This litigation is described in the opinion.]

"It was agreed at the trial that the respondents' claim rests in prescription. There was no evidence offered by either side of a common grantor in past years. The original respondent [Josephine A. Priest] is now deceased and the present respondents claim under her, by deed dated May 4, 1929. . . . The deed does not mention any right of way appurtenant, but in the absence of objection I infer that whatever prescription the original respondent had worked out was transferred on delivery of said deed. . . .

"The evidence at the trial showed that a right of way to the Priest land over locus had been used regularly since the earliest recollection of all witnesses on both sides, such use being exercised over a location on the ground substantially as now travelled; and I so find.

"That gates or bars existed in earlier times at either end of the way was controverted by the respondents. As the whole claim of the respondents is a matter of affirmative proof, the burden is on that side of the case, . . . which I find has not been sustained as to a way free of gates or bars. By the examiner's report the petitioner's necessary proof is sustained as to his title in fee. . . . And on all the evidence, regardless of burden of proof rules, I find said way as originally prescribed was subject to

the right of the servient estate owners to maintain gates or bars at either end.

"This situation I also find continued unopposed until about eighteen years ago, when Harry W. Priest testified he threw down some gates which the petitioner had put up. Since that date the parties have battled manfully for what they have regarded as their rights, and considerable lumber has been wasted in the course of the proceedings.

"In the earlier life of rural New England gates, bars and even fences relating to private easements however acquired were not unusual, and have been sustained by the courts. . . .

"I accordingly find there is appurtenant to the respondents' land a general right of way over the land sought to be registered, subject to the right of the petitioner and his successors in title to maintain reasonably well equipped gates at either end of said way over locus, which the owners and occupants for the time being of the respondents' land are required to open and close in a reasonable manner when passing through. Such way is to be used in common with the owners and occupants for the time being of the servient estate. And it shall also be lawful for all persons legally invited to visit either the dominant or servient estate, to use said way. Questions relating to the repair and improvement of said way are necessarily to be governed by general rules of law applicable thereto, as occasions arise hereafter.

"I located said way as one rod wide in the place where the present travelled way exists, and order that the average middle line of such way be established by engineering data to be filed in our engineering department to the satisfaction of the court."

"One further question remains for decision. The respondents claimed at the trial that two actions brought in the superior court, the record of which I admit against the objection and exception of the petitioner, constitute *res judicata* against any right to maintain obstructions at the ends of said way on locus." The judge then stated the

proceedings in the two suits in equity, which are described in the opinion, and continued: "What would have happened if there had been a final decree on the merits I need not consider. In the absence of any statute like G. L. c. 185, § 44, I think the respondents' contention fails, and I so rule. . . .

"It is also to be noted that the defendant in the earlier equity suit had no interest in the land now claimed by the present respondents until May 4, 1929, so far as appeared by any evidence in this case.

"On all the evidence I find for the present petitioner, subject to a right of way as herein established. I find the said petitioner has title proper for registration and I order a decree accordingly, upon the filing of engineering data satisfactory to the court.

"I refuse to make the rulings requested by the respondents except as given in whole or in part in this decision."

The respondents appealed from the decision.

*A. S. Feinberg*, for the respondents.

*T. Weston*, for the petitioner.

WAIT, J. This proceeding for registration of title to land was begun by petition in the Land Court filed October 28, 1912, by Hortense E. Merry, who alleged in his petition that he acquired title by deed dated March 20, 1912. He alleged that he owned in fee simple; and had no knowledge of any mortgage or encumbrance, or of any right, legal or equitable, either in possession, remainder, reversion or expectancy, in any other person. Names and addresses of all owners and occupants of adjoining lands, so far as known to him, were set out. Among them was that of Josephine A. Priest. She filed an answer on May 6, 1913, denying the allegations of the petition, and, in particular, setting up in defence that "she has a right of way over the premises described in the petition." The record is bare until in February, 1931, Hortense E. Merry moved that Laura M. Merry, to whom he had conveyed in December, 1928, be substituted as the person in whose name title be registered. As of January 15, 1931, Harry W. Priest and Mary B. Sands were allowed to file an answer, which alleged that

"they have free and open right of way leading from West Street to their property over the premises described in the petition," and further alleged that their right of way had been judicially established in proceedings held before the Superior Court in two cases named.

The judge of the Land Court found that, appurtenant to the land of the respondents Priest and Sands, there was a general right of way over the land sought to be registered, subject to the right of the petitioner and his successors in title to maintain reasonably well equipped gates at either end of the way over the locus, which the owners and occupants for the time being of the respondents' land are required to open and close in a reasonable manner when passing through, such way to be used in common with owners and occupants of the servient estate. Harry W. Priest had no title before 1929. In 1912 he tore down gates put up by the petitioner, and, in May, 1912, the latter filed a bill in equity to restrain him from interfering with such gates. In September, 1912, a master's report favorable to Priest's claim as set up here was filed, but it was never confirmed; and no decree was made in the case until March 8, 1926, when the bill was "dismissed under order of court." No other final decree was made. Another bill was filed in 1914 by Josephine A. Priest against Merry and others in the course of the controversy over the right of way. This bill was disposed of by the same order and at the same time as that filed in 1912. Josephine A. Priest is dead. The respondents contend that the decrees dismissing the bills and the findings of the master constitute *res judicata* which establish the respondents' claim. The decision in *Farnum* v. *Brady*, 269 Mass. 53, that dismissal under order of court such as took place here, although a final decree, does not have the effect of *res judicata*, is controlling here. The judge was right in ruling that the answer of *res judicata* was not sustained. See also *Wight* v. *Wight*, 272 Mass. 154. *Ansara* v. *Regan, ante*, 586, is not in point.

The respondents further contend that there was error in the rulings that they had the burden of proving the existence of the full right asserted by them in the way; and in

the finding that the petitioner was entitled to maintain gates upon it. No deed creating the right of way was shown. There had never been a common owner of the premises of the petitioner and the respondents. It was admitted that any right rested upon prescription and that for many years owners of the respondents' land had passed over the petitioner's. Whether at any time gates or bars had been maintained was in dispute. It is to be noted that the allegations of the answer of Josephine A. Priest filed in 1913 and of the answer filed by the respondents in 1931 are not identical. The first asserts only a "right of way over the premises"; the second asserts a "free and open right of way" from West Street. That street did not touch the petitioner's land. In these circumstances the ruling was right. The claim of the respondents went beyond merely a right to pass and repass over the land. It may well be that the burden of proving that the title sought to be registered was free from encumbrance rested on the petitioner, but the extent of the encumbrance was an affirmative fact to be proved by those asserting it. *Hughes* v. *Williams*, 229 Mass. 467. *Nantucket* v. *Mitchell*, 271 Mass. 62, 68. No good ground for vacating the decree would appear, however, if that ruling were wrong; for the evidence is not reported, and the judge has stated that, regardless of rules as to burden of proof, he finds upon all the evidence that the right prescribed was subject to the right of the servient owner to maintain gates or bars at either terminus on the land. Such a finding must stand. *Bessey* v. *Ollman*, 242 Mass. 89, and cases cited at page 91. It is true that the deed to the petitioner conveyed the premises subject to existing rights of way, but this does not prove their existence or their extent. The deed to the respondents was silent as to appurtenant rights of way, but this does not show that such rights do not exist.

Where rights of way exist, their extent is matter for proof. That gates and bars may be maintained by the servient owner over a right of way is recognized. The power depends upon circumstances. It well might be found wanting where the grant was of a right of way in a lane

defined by stone walls pierced in places by bar ways admitting to the lane thus marked out, *Dickinson* v. *Whiting*, 141 Mass. 414; or where a carefully drawn deed described the grant, *Williams* v. *Clark*, 140 Mass. 238, *Hamlin* v. *New York, New Haven & Hartford Railroad*, 176 Mass. 514; but the servient owner retains the use of his land for all purposes except such as are inconsistent with the right granted to the dominant owner or acquired by him, and, if gates or bars are appropriate to facilitate that use, he may establish or maintain them if no material interference with the easement results. *Short* v. *Devine*, 146 Mass. 119. *Ball* v. *Allen*, 216 Mass. 469. See *Atkins* v. *Bordman*, 2 Met. 457; *Maxwell* v. *McAtee*, 9 B. Mon. 20; *Ames* v. *Shaw*, 82 Maine, 379; *Bean* v. *Coleman*, 44 N. H. 539. The decision in *Ball* v. *Allen*, 216 Mass. 469, rests upon a finding that bars, in that case, did impose a greater interference than gates and materially affected the use. We have dealt with all the objections argued by the respondents. As a result the order will be

*Order of decree for petitioner affirmed.*