**TALO of Pago Pago, Plaintiff**

v.

**POI of Pago Pago, Defendant**

No. 16-1937

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Laolao" in Pago Pago]

July 2, 1938

A. A. MORROW, *Chief Justice;* PULETU, *District Judge;* and MULI, *District Judge.*

DECISION

The land Laolao lying near the village of Pago Pago was surveyed and offered for registration by Poi, pursuant to Section 74 of the Codification. Talo objected to the registration of the land as Poi's claiming that it was his

9

property; hence this litigation. At the hearing Poi stated that his claim to the land was as matai of the Poi family, and not as an individual. Talo likewise stated that he claimed as matai of the Talo family and not as an individual.

■ From the evidence, which we have examined with great care, it is clear to us that the land Laolao was in the possession of and being used by the Poi family at the time of the establishment of the Government in 1900. There was convincing testimony that the copra on the land was being cut by Poi Peniata, the immediate predecessor of the present Poi, when the American flag was hoisted in Tutuila. There was no evidence to show that at that time there was an outstanding title in any other family or person, or that the land was claimed by anyone else. We must conclude, therefore, that in 1900 this land was, according to Samoan customs, the property of the Poi family. Having acquired title to the land by Samoan custom, it is still the property of the Poi family unless the Pois have parted with its ownership voluntarily, lost it through the operation of the doctrine of adverse possession, or it has been taken through condemnation proceedings. *Ilaoa v. Toilolo*, No. 5-1937. The acquisition of Tutuila by the United States did not affect private land titles. There was no evidence that the Poi family has parted with its ownership voluntarily, or that the land was condemned. Therefore, the possibility of loss of title through either of the methods set out in the preceding sentence may be put to one side. This leaves the question of the loss of title by the Poi family to the Talo family through operation of the doctrine of adverse possession to be considered.

■ It is elementary that an act of the English parliament in force at the time of the American Revolution and

applicable to the new conditions and surroundings in the States became a part of the law of most of the States of the United States, either by express adoption or judicial construction. See 12 *Corpus Juris* 184–186. Referring to the common law the editors of *Black's Law Dictionary* (3rd Ed.) at page 368 say: ". . . As concerns its force and authority in the United States, the phrase designates that portion of the common law of England (including such acts of parliament as were applicable) which had been adopted and was in force here (meaning the United States) at the time of the Revolution. This, so far as it has not since been expressly abrogated, is recognized as an organic part of the jurisprudence of most of the United States (citing various cases)."

Section 3(1) of the Codification of the Regulations and Orders for the Government of American Samoa provides that ". . . so much of the common law of England as is applicable and not repugnant to or inconsistent with the Constitution and laws of the United States of America, and the laws of American Samoa, is declared to be in full force within American Samoa."

It requires no argument to reach the conclusion that the Statute of 21 James I, Chap. 16, passed by the English parliament in 1623 and, with certain exceptions, limiting actions for the recovery of real property to a period within twenty years after the accrual of the right of action, is applicable and suitable to conditions in American Samoa in the absence of a provision in the Codification prescribing a period within which actions to recover real property may be brought after the accrual of the right to sue. Nor are the provisions of that statute "repugnant to or inconsistent with the Constitution and laws of the United States of America." If that statute is not in force here, then there is no limitation upon the time within which an action may be brought for the recovery of real

property, and conceivably such an action might be maintained after a hundred years after the accrual of the right of action. Such a situation should not be tolerated, and in view of the provisions of Sec. 3(1) of the Codification we do not believe that it was the intent of the legislative authority that it should be.

We think that the phrase English common law as used in Sec. 3(1) should be interpreted to include such acts of the English parliament as were in force at the time of the American Revolution and are suitable to conditions in American Samoa. It is our opinion that the Statute of 21 James I, Chap. 16, is a part of the law of American Samoa.

It is generally held that the operation of such a statute is to transfer the title to the land to the wrongful possessor. *Tiffany on Real Property*, 997–8; *Baker v. Oakwood*, 123 N.Y. 16; *Hughes v. Graves*, 39 Vt. 359; *Harpending v. Reformed Protestant Dutch Church of New York City*, 16 Peters (U.S.) 455; *Schock v. Falls City*, 31 Nebr. 599; *Jacks v. Chaffin*, 34 Ark. 534; *McDuffee v. Sinnott;* 119 Ill. 449; *Way v. Hooten*, 156 Penn. St. 8; *Mitchell v. Campbell*, 19 Oreg. 198.

█ To acquire title by adverse possession, the possession must have been continuous and uninterrupted for the statutory period. "The adverse possession must continue without interruption for the statutory period, and, if an interruption occurs and possession is thereafter resumed, the limitation period commences to run only after the time of such resumption." *Tiffany on Real Property*, 999, citing *Steeple v. Downing*, 60 Ind. 478; *Ross v. Goodwin*, 88 Ala. 390; *Armstrong v. Risteau's Lessee*, 5 Md. 256; *Old South Society v. Wainwright*, 156 Mass. 115; *Bliss v. Johnson*, 94 N.Y. 235.

What does the evidence show as to the possession of the land Laolao by the Talo family? It is admitted that the present Talo built a small fale on the land about 1935 and

that he buried one of his children on it in 1936; that he, or the members of his family under his mataiship, planted bananas, taro and pineapples on the land for some two or three years (some witnesses put it at five years) prior to the institution of the action in the latter part of 1937. There was some evidence, which we do not regard as entitled to much weight, that Talo Taluega was in possession of the land for a period of between one and a half and two and a half years some fifteen or twenty years prior to 1937. He stated on the stand that he had been living in Sailele for "about fifteen years" prior to the hearing of the case. There was also some evidence that he had possession for a few months in 1915. Talo Taluega testified that other Talos had used the lands at other times. However, the record of the testimony shows that upon further examination he admitted that he was basing his statement on hearsay, that he had no personal knowledge of the truth of his statement and that he was just repeating what he had heard. This hearsay testimony cannot be considered.

Falealili testified that he was 47 years of age and had lived in Pago Pago all his life and had been familiar with the land ever since he was old enough to "know things." He stated that the Talo family had cut the copra from the land all the time that he had been familiar with it. On further questioning he admitted that he had seen Talo Siolo cutting copra on the land on two occasions only, and no one else; that he had not seen anyone cutting copra on it for twenty-eight years. And he finally admitted that he did not know "very much about (the) copra cutting." The testimony of the other witnesses for Talo as to the use and occupation of the land by the Talo family was equally unsatisfactory to prove adverse possession of it for twenty years.

As a whole the evidence clearly preponderates in favor

of the view that the Poi family through use and occupation of the land was, under Samoan customs, its owner when the Government was established in 1900; that it used and occupied the land continuously and without interruption at least until 1932, and probably until 1935. In one of these two last mentioned years Talo took the possession from Poi and has held it since. Poi objected verbally, but without physical interference.

Let it be assumed for the sake of argument that the Talo family had the use and possession of the land for a few months in 1915 and again for two and a half years some fifteen or twenty years prior to 1937 and again from 1932 on (and this is putting the case for Talo much more favorably than the evidence as a whole warrants) nevertheless the Talo family did not acquire title to the land by adverse possession. Title to land, as heretofore stated in this opinion, cannot be acquired by adverse possession unless such possession be continuous and uninterrupted for the statutory period which in the case of American Samoa is twenty years. Upon the assumption stated the Talo family had possession for about nine years only and not twenty years, and in addition the possession was broken up into three parts and consequently was not uninterrupted as the law requires.

It follows, therefore, from the principles of law herein stated and their application to the evidence adduced at the hearing that the land Laolao is the property of the Poi family and not the Talo family.

It is accordingly ORDERED, ADJUDGED AND DE-CREED that the land Laolao, as shown on the survey filed for registration by Poi, be registered as the property of Poi in his capacity as the matai of the Poi family. Court costs in the sum of $25.00 are hereby assessed against Talo, the same to be paid within sixty days.

All the Judges concur.