NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1145

BARBARA J. BUCKLEY, trustee,[1]

vs.

NEW RUSHY MARSH REALTY, LLC, & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff owns property in the Cotuit area of Barnstable where she and her husband (collectively, the Buckleys) live.  The defendants own adjacent land that the parties characterize as a "gentleman's farm."  A road, known as Fuller's Marsh Road, runs between the farm and the Buckleys' property and provides access to both.[3]  In December of 2019, the defendants (farm owners) constructed a locked gate across Fuller's Marsh Road to prevent third party access to the farm. It is undisputed that one of the gateposts lies on land owned by

---

[1] Of the BJ Realty Trust.

[2] Pinquickset Cove, LLC.

[3] The parties treat Fuller's Marsh Road as a wholly private road. The Buckleys have direct access from their home to a public road, but they rely on Fuller's Marsh Road to gain access to the back of their property.

the Buckleys in fee and that much of the gate itself lies on such land. Nevertheless, the farm owners did not obtain, or even seek, the Buckleys' permission before installing the gate. Unsatisfied with the farm owners' after-the-fact offer to provide them a key by which they could open the gate, the Buckleys filed the current action seeking removal of it.[4] On summary judgment, a Superior Court judge ruled in the Buckleys' favor, and the farm owners appealed. We affirm.

It is undisputed that the farm owners hold an easement to cross a portion of the Buckleys' property, including the land that the Buckleys own in the vicinity of the gate. It is on the basis of the easement that the farm owners claim a right to use Fuller's Marsh Road and to control access to it.[5] According to them, as the owners of land benefited by the easement (the so-called "dominant estate"), their rights with respect to the road

---

[4] For simplicity, we treat the Buckleys as the plaintiffs, even though suit was filed by Barbara J. Buckley as trustee of the realty trust that holds title.

[5] In fact, because the farm property is bounded by the edge of the road, the record suggests that -- by operation of the derelict fee act, G. L. c. 183, § 58 -- the farm owners may hold the underlying fee to the centerline of the road. See Kubic v. Audette, 98 Mass. App. Ct. 289, 301-303 (2020). However, both in Superior Court and on appeal, the farm owners have not asserted any right to construct the gate based on their potential status as co-owner of the road. Instead, they defended their actions based solely on their status as easement holders. The judge resolved the case on that basis, as do we. See Goncalves v. Boston, 66 Mass. App. Ct. 180, 186 n.12 (2006) (issues not briefed are waived).

2

are superior to those of the Buckleys (the owners of the so-called "servient estate").  While recognizing that the construction of the gate impinges somewhat on the Buckleys' ability to access their own property, the farm owners argue that these impacts are outweighed by the benefits to the farm of preventing unauthorized third party access.

We turn to the language of the easement, which provides "the most important evidence of intention."  Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973).  The easement provides the farm owners:

> "a right of way for all purposes for which public ways may now or hereafter be used in the Town of Barnstable, including without limitation the installation, use, repair, restoration and replacement of pipes, wires, poles, conduits and appurtenances for drainage, sewer, water, gas and electricity, telephone and other utilities therein, thereon and thereover and also including the construction, use, repair and restoration of a roadway with pavement . . . ."

The farm owners maintain that this language expressly allows the construction of a gate because a gate post falls within the ordinary meaning of the term "pole."  Even accepting that a "post" might be considered a "pole," the easement does not allow the construction of all such improvements but instead refers to those that would serve to provide access "for" various enumerated "and other utilities."  In other words, the easement allows improvements to be made for the purpose of serving the right of way that the easement provides.  Here the farm owners

seek not to further their ability to access their property, but to erect a barrier that would bar others from doing so.[6]

Because the easement does not provide the farm owners a right to build a gate on or over the Buckleys' property, the truism that the Buckleys may not use their property to interfere with the farm owners' easement rights is beside the point. So too is the claim that the placement of the gate would provide the farm owners significant benefits, while causing the Buckleys only minimal impacts on their ability to use their own land.[7]

---

[6] The farm owners make no claim that the third parties they are seeking to bar have been interfering with their ability to use the easement (as might support a claim that the easement was being overburdened).

[7] The farm owners point to cases where courts have allowed a gate constructed across a right of way to remain after weighing the balance of interests that resulted from the gate's placement. See e.g., Merry v. Priest, 276 Mass. 592, 600 (1931). In those cases, however, the party that constructed the gate was the owner of the servient estate, that is, the party that owned the fee in the property over which the easement ran. Id. at 598-599. Indeed, in allowing a gate to stay under such circumstances, the court reasoned that the owner of the servient estate "retains the use of his land for all purpose except such as are inconsistent with the right granted to the dominant owner or acquired by him." Id. at 600. The context of those cases thus is completely different from the one before us in which easement holders are seeking to construct an improvement that goes beyond what the easement allows. The farm owners cite to one 1892 case that they claim supports their position that a mere easement holder can block access over a right of way. See Old S. Soc'y v. Wainright, 156 Mass. 115, 121 (1892). But that case involved the question whether someone who had blocked a passageway to a discontinued privy thereby obtained adverse possession of it. Id. Whatever the import of that case, it is not inconsistent with our ruling today.

4

Cf. Goulding v. Cook, 422 Mass. 276, 280 (1996) (property owner must remove septic system that encroached on neighbor's land even though it was constructed in only suitable location and on land that owner reasonable had thought was his). Put simply, so long as they do not interfere with the farm owners' easement rights, the Buckleys retain the right to control what use is made of their land.

Judgment affirmed.

By the Court (Green, C.J., Milkey & Grant, JJ.[8]),

*Joseph F. Stanton*

Clerk

Entered: November 6, 2023.

---

[8] The panelists are listed in order of seniority.

5