Patterson v. Paul.

DAVID D. PATTERSON & another[1] vs. GERTRUDE NICHOLS
PAUL & others.[2]

Suffolk. February 5, 2007. - March 30, 2007.

Present: GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Easement. Real Property,* Easement, Restrictions, Deed. *Deed,* Construction.
*Seashore. Declaratory Relief. Practice, Civil,* Declaratory proceeding.

In an action brought by the owners of a parcel of land against the neighbors
on both sides of their property concerning the scope and duration of view
easements that enabled the parties to see certain scenic features, the judge
correctly concluded that the easements were not subject to the thirty-year
limitation set forth in G. L. c. 184, § 23, where the easements were af-
firmative, rather than negative, in nature, and did not constitute a restric-
tion on property [662-664]; moreover, the judge correctly concluded that
the easements protected only such views as existed when the easements
were created [665-667], but erred in ruling that the trimming and topping
of vegetation would be limited to one year's prior growth [667-668];
further, the judgment applied with equal force to the plaintiffs as well as
the defendants [668-669].

CIVIL ACTION commenced in the Land Court Department on
June 6, 2003.

The case was heard by *Charles W. Trombly*, J., on motions
for partial summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Diane C. Tillotson* for the plaintiffs.

*Alan E. Lipkind & E. James Veara* for the defendants.

SPINA, J. In this action brought by David D. Patterson and
Deborah K. Allen (plaintiffs), the owners of a parcel of land in
Orleans, against the neighbors on both sides of their property,
we consider the scope and duration of view easements that en-

[1]Deborah K. Allen.

[2]Katherine Nichols McGinley and A. Rives McGinley.

able the parties to see, among other scenic features, the waters
of Little Pleasant Bay and the Atlantic Ocean. For the reasons
that follow, we conclude that the view easements in this case
are affirmative easements not limited in duration to thirty years,
that the easements protect only such views as existed when the
easements were created in 1999, that the trimming and topping
of vegetation to maintain the views as they existed in 1999 need
not be performed every year and, as such, is not limited to one
year's prior growth, and that declaratory judgment as to the
rights and obligations of the parties under the view easements
applies with equal force to all of the parties.

1. *Factual and procedural background.* The parties have
stipulated to the following facts. The plaintiffs own a lot with a
single-family home at 44 Nichols Road in Orleans (Lot 9B). On
one side of their property is a lot owned by Gertrude Nichols
Paul (Lot 9A), having thereon a single-family home with ap-
purtenant buildings. On the other side of the plaintiffs' property
is a lot owned by Katherine Nichols McGinley and A. Rives
McGinley (Lot 9C), having thereon a single-family home. All
three properties were once held in common as part of one three-
acre parcel.

In 1986, the three-acre parcel was subdivided into three one-
acre lots. These lots were conveyed separately by deeds rec-
orded in the Barnstable County registry of deeds on April 14,
1999.[3] All three deeds contain the same view easement in favor
of the other properties: Lot 9A has the benefit of a view ease-
ment across Lots 9B and 9C; Lot 9B has the benefit of a view
easement over Lot 9C; and Lot 9C has the benefit of a view
easement over Lot 9B. From the buildings located on Lot 9A,
the ground slopes in a gradually downward direction across Lot
9B and out toward Little Pleasant Bay.[4] A sketch showing the

---

[3]Lot 9B was first conveyed to Richard F.F. Nichols, Jr. Then, on August 19,
1999, the plaintiffs purchased it.

[4]The plaintiffs' property includes a coastal bank as defined in the Town of
Orleans Wetlands Regulations, promulgated by the conservation commission
of Orleans. See Town of Orleans Wetlands Regulations c. 196A, § 196A-4
(2004). Any trimming or removing of vegetation along this coastal bank must
be approved by the conservation commission. See *id.* at § 196A-2. In these
appeals, the parties have raised no issues as to the impact of the coastal bank
on their views.

three properties and the view easement is attached hereto as an Appendix.

The language in the three deeds pertaining to the view easements is similar and provides as follows:

> "No structure shall be constructed upon any portion of the area subject to the view easements. The view easements will permit the owners of Lots 9A and 9C as shown on said Plan to trim and top trees and other vegetation within the easement area on Lot 9B, as well as the Grantees herein and their successors in interest to trim and top trees and other vegetation within the easement area on Lot 9C, so as to clear and maintain an unobstructed view across the entire view easement areas, exposing to view any and all, but not limited to, the waters of Pleasant Bay and the Atlantic Ocean, along with islands, marshes, beaches, and mainland promenades which present themselves. Trimming and topping shall not be done more than once per calendar year and only after thirty (30) days written notice to the owners of the lot affected specifying the date or dates upon which the trimming will occur and, if requested, identifying the vegetation to be removed. All such trimming and topping shall be at the sole risk (including, without limitation, all responsibility for and liability to any person in connection therewith) and sole expense of the owner of the land of the grantees who shall further be responsible for removal of debris associated therewith."

The view easements do not include an express limitation on duration.

At the time of the execution of the deeds in 1999, there was a significant amount of vegetation, including trees, on all three properties. After purchasing Lot 9B, the plaintiffs planted a variety of shrubs, bushes, and trees along the boundary lines of both sides of their property. The present controversy arose in the spring of 2003 when, in accordance with her view easement, Paul gave notice to the plaintiffs of her intent to prune the new plantings along their common boundary line to a height of two to three feet.

The plaintiffs filed an amended complaint in the Land Court against Paul and the McGinleys (collectively, the defendants) in which they sought declaratory and injunctive relief with respect

to the scope and duration of the view easements. More specifically, the plaintiffs sought a judgment (1) declaring that the view easements benefiting the defendants were valid only for a thirty-year period pursuant to the limitation on the duration of certain restrictions on land set forth in G. L. c. 184, § 23; (2) enjoining the defendants from entering their property to trim vegetation in the view easement area unless such action was specifically authorized by court order; and (3) defining the views protected under the easements.[5] The parties then filed cross motions for partial summary judgment as to the issue of the applicability of the thirty-year limitation set forth in G. L. c. 184, § 23.[6]

After considering the defining characteristics of affirmative and negative easements, and after analyzing the particular features of the view easements here, a judge in the Land Court concluded that such easements were affirmative and, therefore, were not subject to the thirty-year durational limitation set forth in § 23. The judge granted the defendants' motion for partial summary judgment on this issue, and he denied the plaintiffs' cross motion for partial summary judgment. The plaintiffs proceeded to trial on their remaining claims.

The judge, who viewed the properties prior to trial, ruled in favor of the plaintiffs. He opined that the plain and unambiguous language of the easements must be construed in the context of the circumstances that existed when the deeds were executed. Accordingly, the judge declared that the defendants' rights under the view easements were limited to maintaining such views of

[5]In their amended complaint, the plaintiffs also raised a claim against Paul pertaining to the removal of utility lines that crossed over the plaintiffs' property, in the absence of an easement or other legal right, to service the buildings on Lot 9A. On March 15, 2005, the parties filed a stipulation for the entry of judgment in the plaintiffs' favor on this claim.

[6]General Laws c. 184, § 23, provides as follows: "Conditions or restrictions, unlimited as to time, by which the title or use of real property is affected, shall be limited to the term of thirty years after the date of the deed or other instrument or the date of the probate of the will creating them, except in cases of gifts or devises for public, charitable or religious purposes. This section shall not apply to conditions or restrictions existing on [July 16, 1887], to those contained in a deed, grant or gift of the commonwealth, or to those having the benefit of [§ 32]." An affirmative easement is not subject to this statutory provision. See *infra.*

scenic features as had existed in 1999; the easements did not confer on the defendants a right to remove any and all vegetation in the view easement area so as to expose additional scenery to view. In conjunction with his conclusions, the judge ordered, inter alia, that the trimming and topping of vegetation on Lot 9B by the defendants be limited to the growth which had taken place during the year prior to the date of any such trimming and topping. The parties filed cross appeals, challenging the judge's determinations with respect to (1) the applicability of G. L. c. 184, § 23; (2) the scope of the view easements; (3) the one-year limitation on the trimming and topping of vegetation; and (4) the scope of declaratory relief. We granted the plaintiffs' application for direct appellate review.

2. *Applicability of G. L. c. 184, § 23.* The plaintiffs contend that the judge erred in concluding that the view easements are affirmative easements not subject to the thirty-year limitation set forth in G. L. c. 184, § 23. They argue that a view easement is to be considered a negative easement, constituting a restriction on the use of land that, absent the recording of a notice of restriction, see G. L. c. 184, § 27, cannot be enforced more than thirty years after the date of its creation. See *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 288 (2001). We disagree with the plaintiffs' analysis of the nature of the particular view easements here.

It is well established that restrictions on land are disfavored. *Id.* at 290. See *Ward* v. *Prudential Ins. Co.*, 299 Mass. 559, 565 (1938). "Since 1887, Massachusetts law has imposed a thirty-year time limitation on land use restrictions that do not themselves contain an express limitation on duration. St. 1887, c. 418. Landowners, however, remain free to burden or benefit their land with use restrictions, enforceable for a period less than, or greater than, thirty years." *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc., supra* at 288.

"A 'restriction on the use of land' is a right to compel the person entitled to possession of the land not to use it in specified ways." *Labounty* v. *Vickers*, 352 Mass. 337, 347 (1967). Such a restriction may be imposed by a negative easement, an

equitable servitude, or a covenant running with the land.[7] See *id.* As is pertinent here, a negative easement restricts the uses that can be made of property. See Restatement (Third) of Property (Servitudes) § 1.2 comment a, at 13 (2000). "A negative easement consists solely of a veto power. The easement owner has, under such an easement, the power to prevent the servient owner from doing, on his or her premises, acts that, but for the easement, the servient owner would be privileged to do." 4 R. Powell, Real Property § 34.02[2][c], at 34-16 (M. Wolf ed. 2000). See Restatement of Property § 452 (1944). According to the Restatement, in recent times, a common use for a negative easement has been to create a view easement, designed to preserve scenic attributes of property by mandating that the owner of the servient estate not undertake any activities, such as the construction of a building, that would impede the view of the owner of the dominant estate. See Restatement (Third) of Property (Servitudes) § 1.2 comment h, at 17. Significantly, however, "the holder of such a [negative easement] has no right to use the land on which he holds the restriction as he would if he held an affirmative easement." *Labounty* v. *Vickers, supra* at 347-348.

An affirmative easement "creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." Restatement (Third) of Property (Servitudes), *supra* at § 1.2(1). See 4 R. Powell, Real Property § 34.02[2][c], at 34-15 (affirmative easement allows easement owner to enter servient estate and do acts thereon). An affirmative easement is not considered to be a "restriction" affecting the use of real property such that it is subject to the statutory time limitation imposed by G. L. c. 184, § 23. See *Myers* v. *Salin,* 13 Mass. App. Ct. 127, 135-136 & n.11 (1982). Cf. *Labounty* v. *Vickers, supra* at 348 (concluding that affirmative easements not "restrictions on the use of land" within meaning of G. L. c. 184, §§ 26-30).

---

[7]As explained in Restatement (Third) of Property (Servitudes) § 1.2 comment b, at 14 (2000), a negative easement has become indistinguishable from a restrictive covenant, the term more typically used to describe a servitude that limits permissible uses of land. See *id.* at § 1.3.

Here, the language of the view easements is distinguishable, in purpose and effect, "from that often employed to restrain the use of real property, and building upon it, for the benefit of other land, resulting in a 'restriction' enforceable on equitable principles." *Myers* v. *Salin, supra* at 135 (prohibition against building on registered shore land constituted negative easement subject to G. L. c. 184, § 23). We recognize that the view easements do not allow the plaintiffs to construct any structure on the portion of their property subject to the easements. This restraint suggests a negative aspect to the view easements. However, as pertains to the present controversy, we agree with the defendants that the view easements explicitly confer on them the affirmative right to enter onto the plaintiffs' property "to trim and top trees and other vegetation within the easement area on Lot 9B . . . so as to clear and maintain an unobstructed view across the entire view easement areas." The purpose and effect of the view easements are not simply to limit the uses that the plaintiffs can make of their own property. See *Myers* v. *Salin, supra* at 135-136. Rather, the view easements here have taken on the defining characteristics of an affirmative easement by conferring on the defendants the right to enter and use land in the possession of another, and we conclude that this fact is dispositive.

There is no limiting language in the easements stating that the defendants are *only* permitted to enter the plaintiffs' property on an annual basis *if* the plaintiffs fail to clear and maintain the scenic views themselves. The plaintiffs are not obligated to perform any such horticultural maintenance. The rights of the defendants in this regard are absolute, not contingent. As properly found by the judge below, the plain language of the view easements establishes the intent of the parties "to protect, from the perspective and for the benefit of the easement holders, a view over a specified area to enumerated features in the distance, including the ocean." The defendants have been vested with the affirmative right to ensure the protection of their views. Because we conclude that the view easements are affirmative, rather than negative, in nature, they do not constitute a restriction on property within the meaning of G. L. c. 184, § 23, and, therefore, are not subject to that statute's thirty-year limitation.

3. *Scope of the view easements.* The defendants assert that the judge erred in concluding that the easements protect only such views as existed in April, 1999, when the deeds conveying the lots to the parties were recorded. The defendants argue that the plain language of the easements and the circumstances surrounding their creation demonstrate that the "views" to which they are entitled are not so limited. Instead, they continue, the view easements permit the defendants to trim and top vegetation so as to *clear* and maintain completely unobstructed views to the water. We disagree.

"The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 179 (1998). See *Suburban Land Co.* v. *Billerica*, 314 Mass. 184, 189 (1943); *Barchenski* v. *Pion*, 9 Mass. App. Ct. 896 (1980). It follows that the same considerations govern our interpretation of an easement created by deed. See *McLaughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 364 (1996); *Sheftel* v. *Lebel, supra.* "The extent of an easement depends on the circumstances of its creation." *Mugar* v. *Massachusetts Bay Transp. Auth.*, 28 Mass. App. Ct. 443, 444 (1990). "When created by conveyance, the grant or reservation 'must be construed with reference to all its terms and the then existing conditions so far as they are illuminating.' " *Id.*, quoting *J.S. Lang Eng'g Co.* v. *Wilkins Potter Press*, 246 Mass. 529, 532 (1923). See *Hewitt* v. *Perry*, 309 Mass. 100, 105 (1941). See also Restatement of Property § 483 comment d, at 3012 (1944) (meaning of easement created by conveyance "is to be found in its language construed in the light of the relevant circumstances"). "The terms and conditions under which an easement may be created and the manner of its exercise are within the control of the creating parties so long as no forbidding principle of law is violated." *J.S. Lang Eng'g Co.* v. *Wilkins Potter Press, supra.* "The fact that the owner of an easement is not deemed to have a possessory interest in the land with respect to which it exists indicates a lesser degree of control of the land than is normally had by persons who do have possessory interests." Restatement

of Property § 450 comment b, at 2903 (1944). Considered from a different perspective, a "servient owner retains the use of his land for all purposes except such as are inconsistent with the right granted to the dominant owner." *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 258 (1967), quoting *Merry* v. *Priest*, 276 Mass. 592, 600 (1931).

The language of the view easements, when they were created in April, 1999, is specific. The view easements permit the defendants *"to trim and top trees and other vegetation* within the easement area[s] . . . *so as to clear and maintain an unobstructed view across the entire view easement areas*, exposing to view any and all, but not limited to, the waters of Pleasant Bay and the Atlantic Ocean, along with islands, marshes, beaches, and mainland promenades which present themselves" (emphasis added). The defendants erroneously focus on the word "clear" and broadly construe that term as conferring on them an unfettered right to take whatever horticultural measures are necessary to secure for themselves a completely unobstructed view to the water, including, if necessary, substantial removal of vegetation. When considered in its entirety, the language of the easements, together with the then existing conditions on Lots 9B and 9C, do not support the defendants' interpretation.

We agree with the judge below that the language of the easements, read as a whole, suggests an intent by the grantors to maintain the status quo as it existed in 1999. An easement to "trim and top trees and other vegetation" in order to "clear and maintain an unobstructed view" does not permit the wholesale removal of vegetation to create a better view than that which existed when the easements were created. If that had been the intent of the parties, they easily could have so specified in the easements. Rather, the easements were intended to prevent the continual growth of vegetation that would, over time, gradually block the views that had existed in 1999, just as the construction of any structure in the view easement area would have a similar effect.

It appears from the record that the defendants did not have completely unobstructed views to Little Pleasant Bay and the Atlantic Ocean when the easements were created. At the time the plaintiffs purchased their property in August, 1999, three sizeable

cedar trees were already located in the middle of their lot, and the existing coastal bank at one end of their property was overgrown with a variety of shrubs and plantings, as well as a number of evergreen trees that rose above the height of the top of the coastal bank. Moreover, the McGinleys' property was a heavily treed, unimproved lot.[8] Because the extent of an easement depends on the circumstances of its creation, the views here were shaped, and continue to be shaped, by the vegetation that existed on the parties' properties in 1999. The defendants simply have not been vested with the right to change the appearance and condition of the servient estate as it existed when the easements were created; they merely can ameliorate the effects of ongoing vegetational growth to preserve their original views.[9]

4. *Limitation on the removal of vegetation.* The defendants contend that the judge erred in ruling that the trimming and topping of vegetation is limited to one year's prior growth. We agree.

As we have stated, the views to which the defendants are entitled are those that existed in April, 1999, when the easements were created. In order to maintain such views, the easements provide that "[t]rimming and topping shall not be done *more than* once per calendar year" (emphasis added). Nothing in the language of the easements obligates the defendants to trim overgrown vegetation every year and, indeed, because some trees and shrubs grow very slowly, there may be no need for such regular maintenance. If the defendants choose to trim and top vegetation on the servient estate only once every several years, then this maintenance should not be limited to one year's prior growth. The view easements impose no such restriction. Trimming and topping is limited only insofar as it can be done once a year as is necessary to maintain the views as they existed in April, 1999. We add that the defendants will not lose their view easements should they choose to trim and top the vegeta-.

---

[8] We note that nothing prevents the McGinleys from removing as much of the vegetation on their own property as they choose in order to improve their views of Little Pleasant Bay.

[9] Contrary to the defendants' assertion, the plaintiffs are not improperly using the declaratory judgment statute, G. L. c. 231A, in an effort to alter the view easements. Rather, the plaintiffs have sought declaratory relief to define precisely the scope of such easements.

tion less frequently than once a year, because mere nonuse is insufficient to demonstrate an intent by the dominant estate holder to abandon the easement. *Desotell* v. *Szczygiel*, 338 Mass. 153, 159 (1958).

5. *Scope of the judge's determination.* The defendants claim that the amended judgment entered below should govern not only their actions, but also those of the plaintiffs. They assert that the view easements, by their terms, impose the same trimming and topping limitations on all of the parties. Therefore, the defendants continue, any vegetation maintenance by the plaintiffs on the McGinleys' lot should be subject to the same conditions as have been imposed on the defendants. We agree.

The purpose of a declaratory judgment action is "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered." G. L. c. 231A, § 9. See *Kilroy* v. *O'Connor*, 324 Mass. 238, 242 (1949) (relief in nature of declaratory judgment designed to settle completely controversy submitted for determination). General Laws c. 231A, § 8, states that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." An action for declaratory relief will preempt future litigation among the affected parties by resolving any uncertainties about their rights and obligations. See *School Comm. of Cambridge* v. *Superintendent of Schs. of Cambridge*, 320 Mass. 516, 518 (1946); *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 353 (1992).

In their amended complaint, the plaintiffs sought declaratory relief with respect to the scope and duration of the view easements. Both their interests and those of the defendants would plainly and substantially be affected by the judge's interpretation of such easements. All of the parties here have the right to trim and top vegetation on neighboring property, including the plaintiffs, who are entitled to preserve their views over the McGinleys' lot. The conduct of all of the parties is governed by the same operative provisions in the view easements. Therefore, judicial declarations as to the rights of the defendants to trim and

top vegetation, in accordance with the terms of the view easements, apply with equal force to the plaintiffs. This conclusion does not imply that the plaintiffs intend to take any action that would contravene the terms of the easements. We simply recognize that in this declaratory judgment action, the rights and obligations of all of the parties pursuant to the view easements are established.

6. *Conclusion.* The amended judgment entered on April 4, 2006, is affirmed insofar as it granted the defendants' motion for partial summary judgment and denied the plaintiffs' cross motion for partial summary judgment on the issue of the applicability of G. L. c. 184, § 23. The remainder of the amended judgment is affirmed in its entirety, except as follows: (1) in the event that the defendants choose to trim and top vegetation in the view easement area less frequently than once a year, enumerated paragraph 1 is amended to remove the restriction on such trimming and topping that had allowed only the removal of one year's prior growth; and (2) enumerated paragraphs 1, 3, 5, and 6 are amended to indicate that they apply equally to the plaintiffs.

*So ordered.*