## World Species List — Natural Features Registry Institute *vs.* Richard David Reading & another.[1]

No. 08-P-282.

Suffolk. January 8, 2009. - September 29, 2009.

Present: Rapoza, C.J., Duffly, & Cohen, JJ.

*Easement. Real Property,* Easement.

In a civil action in the Land Court in which the plaintiff sought a judgment declaring the meaning of an appurtenant easement and an injunction barring the defendants from cutting vegetation other than that identified by the plaintiff as unwanted, nontree growth, the judge properly granted summary judgment in favor of the defendants, where the plain language of the easement in the relevant deed created an affirmative view easement that permitted the defendants to enter land in possession of the plaintiff and cut vegetation that had not reached a specified dimension [305-308], and where the easement language did not restrict the type of vegetation that might be cut [308-309]; further, there was no merit to the plaintiff's claim that it could transplant trees in excess of the specified dimension onto the easement area, as such conduct would be inconsistent with the defendants' view easement [309-310].

Civil action commenced in the Land Court Department on March 16, 2007.

The case was heard by *Keith C. Long,* J., on motions for summary judgment, and motions for reconsideration were also heard by him.

*Donald R. Furman, Jr.,* for the plaintiff.

*Thomas Lesser* for the defendants.

Duffly, J. A judge of the Land Court entered a summary judgment declaring that easement language was in essence a view easement that permits the defendants to cut vegetation in order to maintain their view. The plaintiff appeals. We affirm.

*Background.* The original plaintiff, Richard Stafursky, is the founder and president of World Species List — Natural Features

---

[1]Julie M. Petty.

Registry Institute (World Species). World Species was substituted for Stafursky as plaintiff in this action, which in essence sought (1) a judgment declaring the meaning of an appurtenant easement originating in a deed from which the defendants, Richard David Reading and Julie M. Petty (collectively, Reading), take title; and (2) an injunction barring Reading from cutting vegetation other than that identified by Stafursky as unwanted, nontree growth.

The parties' properties were originally part of a single parcel of land owned by Stafursky's parents. Stafursky and his siblings, James Stafursky and Sandra Caine, were unable to come to agreement regarding disposition of the parcel following the deaths of their parents, and Sandra filed a petition in Probate and Family Court to partition the parcel. In March, 2001, the siblings entered into a written agreement resolving the issues raised by that action and, in August, 2001, the siblings executed a joint petition for settlement. As set forth in these documents, the siblings agreed that James and Sandra would acquire title in fee to a two-acre lot (with a house) and that the remaining eighty-six acres would be conveyed to Stafursky, who intended to "donate and . . . convey this remaining acreage forthwith to a conservation organization of his choice" provided that "the conveyance to . . . Stafursky will include a three-acre easement adjacent to the two-acre lot, which will allow the owner of the house and the two-acre lot to enter onto the three-acre easement for the sole purpose of cutting grass and brush no larger than two inches in diameter when measured one foot from the ground." The conveyance by Stafursky to the conservation organization would also be "subject to a Conservation Restriction in perpetuity, pursuant to . . . G. L. c. 184."[2]

---

[2]World Species is a charitable organization created by Stafursky, who became its president. On August 18, 2001, World Species voted to accept Stafursky's donation of the eighty-six acres, subject to conditions that include as follows: "There are no buildings of any kind on the property. The land will be open to the public in accordance with a conservation plan to be created by [World Species]."

A conservation plan signed by Stafursky and Susan W. Stafursky, as the officers of World Species, was recorded with the registry of deeds on March 31, 2006. That plan provides, among other things, that World Species "will protect, conserve, restore and preserve the natural landscape of the [eighty-six acres] in perpetuity; . . . that by 'natural landscape' we mean land that is

In accordance with their agreement, the November 20, 2001, deed to James and Sandra recites in relevant part:

"Also conveying an easement to the Grantees to enter on to the parcel set forth below for the sole purpose of cutting grass and brush no larger than two (2) inches in diameter when measured one (1) foot from the ground, excluding any cutting of grass and brush on wooden [*sic*] land as shown on said survey of the three acre easement. This wooded area is not to be cut and is not part of the cutting area.

". . . [Metes and bounds omitted.]

"Said easement area contains 3.00 acres and is entitled 'Easement Area' on Plan of Land surveyed for James Stafursky et al. located in Conway, Massachusetts, dated August 10, 2001, and recorded in the Franklin County Registry of Deeds in Book 108, Page 30."

Stafursky deeded his eighty-six acre parcel, including the area subject to the easement, to World Species, by a deed dated November 20, 2001, that also includes the easement language.

The defendants purchased the two-acre parcel with the home from James and Sandra. Soon thereafter, Reading began cutting in the easement area and has continued to do so on a regular basis. This incited an exchange of letters, Stafursky claiming that Reading could only cut "alien tree species" and "unwanted vegetation."

Stafursky filed a complaint on behalf of World Species, and the parties thereafter filed cross motions for summary judgment. Both motions relied on the parties' stipulation of facts and attached exhibits that had been filed pursuant to the pretrial conference order.[3] World Species also submitted an affidavit by Stafursky, and Reading submitted his own affidavit in support of

under the control of the natural processes; . . . that this conservation plan be directed toward returning these acres to the control of the natural landscape in the most direct, natural and effective way; . . . that there will never be any buildings erected on the [eighty-six acres]."

[3]World Species noted a minor exception (it disputed Reading's description of Stafursky's allegations in a small claims action involving the same parties) that has no bearing on the outcome of this case.

his motion. The judge entered judgment in favor of the defendants, ruling "that the easement is a view easement, that the plaintiff may not transplant new trees into the cutting area of the easement," and that "[i]n order to use and enjoy the easement, the defendants are permitted to cut vegetation in the cutting area, so long as its diameter is two inches or less when measured one foot from the ground."

We have before us World Species' consolidated appeals from the judgment and from the denial of its motion for reconsideration, filed pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974).[4]

*Discussion.* "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law." *Kanamaru* v. *Holyoke Mut. Ins. Co.*, 72 Mass. App. Ct. 396, 398 (2008). "Our review is de novo." *Giuffrida* v. *High Country Investor, Inc.*, 73 Mass. App. Ct. 225, 227 (2008), citing *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997).

Because there are no material facts in dispute, the only issue is the interpretation of the language in the deed, "an issue that is purely a question of law." *McGregor* v. *Allamerica Ins. Co.*, 449 Mass. 400, 402 (2007). See *Rivers* v. *Warwick*, 37 Mass. App. Ct. 593, 596 (1994). World Species concedes that the easement language is unambiguous. It argues that the plain language of the easement reflects that it is not a grant of a view easement and does not permit Reading to maintain a meadow or remove trees transplanted by Stafursky onto the easement area that exceed two inches in diameter when measured one foot from the ground.

1. *View easement.* "An easement is an interest in land which grants to one person the right to use or enjoy land owned by another." *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 133 (1990), *S.C.*, 412 Mass. 309 (1992). An easement establishes an affirmative right to use the

_____

[4]World Species filed two earlier motions to alter or amend judgment, pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974), seeking reconsideration of the grant of summary judgment and an evidentiary hearing. Both motions were denied as untimely. Subsequently, on March 4, 2008, World Species filed two motions for reconsideration pursuant to Mass.R.Civ.P. 60(b)(6), which the judge in his memorandum and order treated as a single motion, and denied. It is from this denial that World Species appeals.

land of another, and differs from a restriction on land which imposes either an affirmative obligation on, or limits the use of, another's land without also establishing a right to use it. See *Labounty* v. *Vickers*, 352 Mass. 337, 347-348 (1967).

We conclude that the language in the deeds creating the easement here must be read as creating an affirmative view easement. In *Patterson* v. *Paul*, 448 Mass. 658, 664 (2007), the Supreme Judicial Court established that "view easements are affirmative, rather than negative, in nature." A view easement is affirmative even though it prevents or restricts the obstruction of a view because the easement holders "have been vested with the affirmative right to ensure the protection of their views." *Ibid.*[5]

A view easement is analogous to an easement for light and air. Such an easement might be seen as a negative easement from the perspective of the servient estate owner (because it prevents the owner from building on certain parts of the land, or from going above a certain height), but it represents an affirmative benefit to the easement holder (because it preserves access to light and air for the benefit of the dominant estate). See Lombardi, Massachusetts Easements and Land Use Restrictions I-22 (2003), citing *Ladd* v. *Boston*, 151 Mass. 585, 588 (1890) (Holmes, J.) ("The right to have land not built upon, for the benefit of the light, air, etc. of neighboring land, may be made an easement, within reasonable limits, by deed").

We do not consider it dispositive that the easement language here does not explicitly state that the purpose of the right to cut vegetation is to permit the benefited land owner to enjoy the view. Compare *Patterson* v. *Paul*, 448 Mass. at 664 (easement language states that easement holder had right to cut vegetation on servient estate "so as to clear and maintain an unobstructed view across the entire view easement areas").[6] As the Supreme Judicial Court ruled in that case:

"The purpose and effect of the view easements are not

---

[5]As such, view easements "do not constitute a restriction on property within the meaning of G. L. c. 184, § 23." *Ibid.*

[6]That the language in the deed to Reading might have been more specific does not detract from our conclusion that the easement language has only one reasonable interpretation in light of the attendant circumstances. See, e.g., *Ladd* v. *Boston*, 151 Mass. at 585, 589 (where easement language did not specifically mention view, Justice Holmes nonetheless held: "we have a plain

simply to limit the uses that the plaintiffs can make of their own property. Rather, the view easements here have taken on the defining characteristics of an affirmative easement by conferring on the defendants the right to enter and use land in the possession of another, and we conclude that this fact is dispositive."

*Ibid.* (citation omitted). As in *Patterson*, the easement here confers on Reading the right to enter land in possession of World Species and to cut vegetation that has not reached a specified dimension. The easement language was created at a time that the land on which cutting was permitted was a meadow. Reading's land overlooks the meadow, with views to the hills that lie beyond. As succinctly noted by the Land Court judge, "the limitation on cutting only grass and brush less than two inches in diameter is also consistent with the circumstances of the grant of the easement. It represents a compromise between the desired uses of the easement property — an open meadow for a view on the one hand and the potential restoration to a natural landscape on the other." Stafursky deeded the land to World Species subject to a conservation plan that precludes the erection of any structures on the land and aims to preserve the natural landscape. Thus, Reading will be able to maintain his view as long as he cuts brush and grass less than two inches in diameter; if he does not cut and vegetation grows larger than that, he will be prohibited from cutting it. These circumstances support the interpretation that the grantor intended to create an affirmative view easement. See *Labounty*, *supra* at 344, quoting from *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940) (we construe scope of easement from parties' intent as determined from "the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable").

Easements, by their nature, must give a benefit to the holder. Cf. *M.P.M. Builders, LLC*, v. *Dwyer*, 442 Mass. 87, 92 (2004) ("An easement is created to serve a particular objective"). We disagree with World Species that Reading benefits from the

case of a grant of easements to have certain parts of the latter not built upon, or not built upon above a certain height").

right to cut the vegetation by being surrounded by conservation land and by having the ability to remove undesirable brush. The former benefit inures to Reading not because of the easement but because the surrounding land has been deeded to World Species subject to a conservation restriction. Clearing World Species' land of brush confers no benefit (other than maintaining the view) on Reading, who has no right to enter World Species' land for any other purpose (such as hiking).

2. *Scope of cutting.* We do not agree that the easement language restricts the type of vegetation that may be cut. Specifically, World Species argues that the word "brush" in the easement language cannot be read to include all vegetation because such an interpretation would permit Reading to maintain the easement area as a meadow.

Here, the language of the easement expressly states that the defendants can "enter on to the parcel set forth below for the sole purpose of cutting grass and brush no larger than two (2) inches in diameter when measured one (1) foot from the ground, excluding any cutting of grass and brush on wooden [*sic*] land as shown on said survey of the three acre easement." At the time the deeds were first executed the easement area was an open meadow on which no trees or vegetation exceeded the specified dimensions.

World Species relies on the fact that Stafursky and his siblings, in discussions leading to their final agreement, referenced the term "meadow," which was later excluded from their agreement.[7] We do not agree that this requires the easement language to be interpreted as precluding a subsequent owner, Reading, from engaging in the specified cutting, thereby maintaining a meadow.

[7]According to World Species, that the grantor did not intend to permit the maintenance of a meadow is evidenced by documents in the record reflecting the siblings' agreement in the Probate and Family Court partition action. Stafursky's motion seeking a pretrial conference states that the siblings "have reached a general agreement" that would, among other things, provide for "a three-acre easement surrounding the two-acre lot, which will allow the owner of the house and two-acre lot to enter onto the three acres and maintain it as a meadow if he or she so desires." As reflected in the joint petition for settlement, this language was changed to provide for an easement "which will allow the owner of the house and the two-acre lot to enter onto the three-acre easement for the sole purpose of cutting grass and brush no larger than two inches in diameter when measured one foot from the ground."

"Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense." *Massachusetts Mun. Wholesale Elec. Co.* v. *Springfield*, 49 Mass. App. Ct. 108, 111 (2000). The easement grants to Reading the right cut "grass and brush" of specified dimensions. The accepted, ordinary meaning of the term "brush" includes shrubs as well as small trees. See, e.g., Webster's II New Riverside University Dictionary 205 (1984) (defining "brush" as: "1. a. A thicket of shrubs or bushes. b. Land covered by brush. 2. Cut or broken branches"); Webster's New Universal Unabridged Dictionary 233, 234 (2d ed. 1983) ("brush" defined as "brushwood," in turn defined as "brush; a thicket or coppice of small trees and shrubs; also, branches of trees cut off"). Because the common meaning of the term "brush" includes small trees, Reading could cut all vegetation growing on designated land, including small trees, so long as he did not permit such vegetation to grow to a point measuring two inches in diameter when measured one foot from the ground.

We agree with the Land Court judge's view that, as provided by the terms of the easement grant, the right requires regular exercise; that is, Reading must "use it or lose it." If Reading does not regularly cut vegetation, small trees existing on the easement area will grow until they exceed two inches in diameter when measured one foot above the ground and he will no longer be permitted to cut such vegetation. Over time, the land will become reforested and Reading will lose the view benefit he derived from the easement.

We also reject World Species' claim that, even if Reading's right to cut vegetation extends to trees, World Species may nonetheless transplant trees onto the easement area that are "larger than two (2) inches in diameter when measured (1) foot from the ground." These trees, World Species asserts, would exceed the size that Reading may cut pursuant to the easement. Rather, we conclude that World Species may not transplant trees of that size onto the easement area because this conduct is inconsistent with Reading's view easement. The easement area would become reforested if World Species were permitted to transplant trees of that size onto the easement area as such trees would exceed the dimensions of vegetation that Reading is allowed to cut, thereby

creating a condition that would eventually cause the view to disappear.

Although servient owners enjoy rights to use their land, they may not engage in activities that are inconsistent or materially interfere with a dominant owner's easement. See *Highland Club of W. Roxbury* v. *John Hancock Mut. Life Ins. Co.*, 327 Mass. 711, 714-715 (1951); *Western Mass. Elec. Co.* v. *Sambo's of Mass. Inc.*, 8 Mass. App. Ct. 815, 818 (1979). The "right of use arising out of [the] easement is superior to [the servient estate owner's] property interest, and the [servient estate owner] must avoid activities which are inconsistent with the [dominant estate owner's] use of the easement." *Texon, Inc.* v. *Holyoke Mach. Co.*, 8 Mass. App. Ct. 363, 366 (1979).

*Conclusion.* We affirm the judgment and the denial of the plaintiff's motions for reconsideration.

*So ordered.*