SMITH vs. SILVA, MISC 19-000088

































 
 LINDA G. SMITH, Plaintiff, v. DINIS SILVA, SILVSCAPES LLC, and MASTERSCAPES LLC, Defendants
 MISC 19-000088 
 APRIL 9, 2021
MIDDLESEX, ss.
ROBERTS, J.
MEMORANDUM OF DECISION GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, DINIS SILVA, SILVASCAPES, LLC AND MASTERSCAPES, LLC














 INTRODUCTION 





 This action was commenced by plaintiff Linda G. Smith ("Ms. Smith") with the filing of a Complaint And Jury Demand on February 15, 2019 against defendants Dinis Silva ("Mr. Silva"), Silvascapes LLC and Masterscapes LLC (collectively, "the Defendants"). Plaintiff's First Amended Complaint ("the Amended Complaint"), [Note 1] the operative complaint in this matter, was filed on August 13, 2019 and sets forth three counts: (1) a determination as to whether Ms. Smith is entitled to damages pursuant to G. L. c. 242, § 7, for trees damaged by the Defendants during construction of a driveway within a 10-foot-wide strip of land ("the Easement Area") belonging to Mr. Silva, Count I; (2) a determination as to whether the Defendants committed trespasses or continuing trespasses by excavating within the Easement Area, Count II; and (3) a declaration pursuant to G. L. c. 231A as to the extent of Ms. Smith's rights in the Easement Area. In particular, there is a dispute between Ms. Smith and the Defendants regarding what activities the Defendants are allowed to perform in the Easement Area, if any. 





 Defendants filed their Motion For Summary Judgment Of Defendants, Dinis Silva, Silvascapes, LLC And Masterscapes, LLC ("the Summary Judgment Motion") and associated documents on January 15, 2021, together with Defendant, Masterscapes', Motion To Strike Plaintiff's Supplemental Answers To Interrogatories ("Motion To Strike Interrogatories"). Ms. Smith's opposition thereto was filed on February 23, 2021. Defendants' Motion To Strike Plaintiff's Opposition To Motion For Summary Judgment ("Motion To Strike Opposition"), based on Ms. Smith's late filing and service of the same and its failure to comply with Rule 4, Rules of the Land Court, was filed on March 1, 2021. A hearing on all three motions was held by videoconference on March 9, 2021, and was continued to March 24, 2021. The Motion To Strike Interrogatories was allowed on that date for the reasons stated on the record and reflected on the docket. The Motion To Strike Opposition was denied, as reflected in a docket entry of even date with this memorandum of decision. For the reasons set forth below, the Summary Judgment Motion is ALLOWED. 





UNDISPUTED FACTS 





 The following facts established in the record and pertinent to the Motion and opposition thereto are undisputed, are deemed admitted, [Note 2] or are matters of public record at the Middlesex (South) Registry of Deeds ("the Registry") of which the court takes judicial notice pursuant to § 201, Mass. G. Evid. 





 1. By deed dated February 3, 1978 and recorded in the Registry at Book 13386, Page 288, John M. Gillis and Nancy P. Gillis ("the Gillises") conveyed to Ms. Smith Lot #3 as shown on a plan entitled "Plan Of Land in Hudson, Mass. Owned by: John M. & Nancy P. Gillis Scale 1" = 40' Feb. 10, 1976 Plan by: Veo Associates Inc. Hudson, Mass." and recorded in the Registry as Plan Number 118 of 1978, consisting of approximately 43,200 square feet. See Plaintiff Linda G. Smith's [Second] Opposition To Defendant's Request For Summary Judgment ("Plaintiff's Opp.") Ex. 1. 





 2. By deed dated September 22, 1995 and recorded in the Registry at Book 25686, Page 533 ("the 1995 Deed"), the Gillises conveyed to Ms. Smith three more parcels of land shown as Lots 5B, 6 and 7 on a plan entitled "Plan of Land in Hudson, Mass. Owned by John M. and Nancy P. Gillis Book 10535 Page 254 Scale: 1" = 40' June 6, 1995 Plan by: Veo Associates Inc. 8 South Street Hudson, Mass." ("the 1995 Plan"). Plaintiff's Opp. Ex. 5. 





 3. As shown on the 1995 Plan, recorded in the Registry as Plan Number 858 of 1995, Lot 5B immediately abutted Ms. Smith's Lot #3 to the southwest, and Lots 6 and 7 were directly across Glendale Road from Ms. Smith's Lot #3 to the northeast. 





 4. As shown on the 1995 Plan, after the 1995 Deed, Ms. Smith's Lot #3 and Lot 5B were abutted by Glendale Road to the northeast and by Lot 5A as shown on the 1995 Plan, still owned by the Gillises, on all other boundaries. 





 5. By deed dated February 18, 1997 and recorded in the Registry at Book 27071, Page 448, Nancy P. Gillis, then a widow, conveyed Lot 5A as shown on the 1995 Plan to Ms. Smith, as a result of which Ms. Smith owned all of the land shown on the 1995 Plan. 





 6. In March 1997, Ms. Smith changed the lot lines to create three new lots out of the five lots shown on the 1995 Plan: Lot 8, consisting of the prior Lots 6 and 7 and the northerly most section of Lot 5A; Lot 3A, consisting of the prior Lots #3 and 5B and a section of Lot 5A; and Lot 5C, consisting of what was left of the former Lot 5A, all as shown on a plan entitled "Plan Of Land In Hudson, Mass. Owned by: Linda G. Smith Scale: 1" = 40' March 10, 1997 Plan by: Veo Associates Inc. 8 South Street Hudson, MA." ("the 1997 Plan") and recorded in the Registry at Book 27205, Page 472. Defendant, Masterscapes, LLC's, Appendix to Exhibits ("Def. App.") Exs. 2 and 4; Plaintiff Linda G. Smith Additional Facts Opposing Defendant's Motion For Summary Judgment ("PAF") ¶ 13. 





 7. Lot 3A is known as 15 Glendale Road and Lot 5C is known as 19 Glendale Road. Def. App. Ex 2. 





 8. By deed dated July 3, 1997 and recorded in the Registry at Book 27457, Page 117, Ms. Smith conveyed Lot 5C to Nancy G. Wollins and Scott E. Golder ("the 1997 Deed"). Def. App. Ex. 4; PAF ¶ 20. 





 9. The 1997 Deed contained the following easement grant ("the 1997 Easement"): 





 Further reserving to the grantor, her heirs and assigns, a ten (10') foot wide easement over said lot 5C running parallel to the property line shown on said plan, which property line has the course bearing: "THENCE N. 64 degrees 04' 14" E. 142.95 feet to a point,", [sic] which easement may be used by the grantor, her successors in title, heirs and assigns, for purposes of maintaining and up keeping the arbor vitae as may grow on Lot 3A, along that line. 





 And it is expressly understood and agreed that the said restrictions and easement above specified shall attach to and run with the land and it shall be lawful only for the said grantor[,] her heirs, successors-in-title, or assigns, and it is expressly understood and agreed that the foregoing covenants and conditions are accepted and agreed to by the grantor and grantee and shall bind their respective heirs, executors, administrators, successors-in-title, or assigns and that any conveyance hereafter made by the grantees, their successors-in-title, heirs, executors or assigns, shall have inserted in the deed or deeds the foregoing covenants and conditions. 





 Def. App. Ex. 4. 





 10. Attached as Exhibit A to the 1997 Deed and recorded in the Registry at 27457, Page 120, was a copy of the 1997 Plan that included a handwritten notation labeling the Easement Area. 





 11. By deed dated February 25, 2015 and recorded in the Registry at Book 64977, Page 518, Nancy G. Wollins aka Nancy C. Golder and Scott E. Golder conveyed Lot 5C to Mr. Silva ("the 2015 Deed"). Def. App. Ex. 3; PAF ¶ 22. 





 12. The 2015 Deed contains the following language regarding the 1997 Easement: 





 Subject to a ten (10') foot wide easement over said lot 5C running parallel to the property line shown on said plan, which property line has the course bearing: "THENCE N. 64 degrees 04' 14" 142.95 E. feet to a point;", [sic] which easement may be used for purposes of maintaining and up keep [sic] the arbor vitae as may grow on Lot 3A, along that line. 





 And it is expressly understood and agreed that the said restrictions and easements above specified shall attach to and run with the land and it shall be lawful only for the said grantor[,] her heirs, successors-in-title, or assigns, and it is expressly understood and agreed that the foregoing covenants and conditions are accepted and agreed to by the grantor and grantee and shall bind their respective heirs, executors, administrators, successors-in-title, heirs [sic], executors [sic] or assigns, shall have inserted in the deed or deeds the forgoing covenants and conditions. [Note 3] 





 Def. App. Ex. 3. 





 13. "[S]aid plan" referenced in the 2015 Deed is the copy of the 1997 Plan recorded as Exhibit A to the 1997 Deed. Def. App. Ex. 3. 





 14. A group of mature evergreen trees exists along the property line between Lot 3A and Lot 5C labeled with the course bearing "THENCE N. 64 degrees 04' 14" 142.95 E. feet to a point." Def. App Ex. 5 at pp. 33-34. 





 15. The group of mature evergreen trees consisted of seven Thuja Occidentalis ("the Arborvitae"), a Norway Spruce ("the Spruce Tree"), and a large evergreen tree with weeping branches, likely a Canadian Hemlock ("the Weeping Evergreen"). PAF ¶ 7. 





 16. The trunks of the Arborvitae are located on Lot 3A and their roots and limbs extend into the Easement Area. PAF ¶¶ 14, 36-38 and 40. 





 17. The trunk of the Spruce Tree is located on Lot 3A, but its roots extend into the Easement Area. CSMF ¶ 5. 





 18. The Weeping Evergreen was located entirely within the Easement Area. CSMF ¶ 8. 





 19. Beginning in November 2015 and extending through February 2016, the Defendants, in various stages, removed limbs and damaged roots located within the Easement Area belonging to the Spruce Tree, Weeping Evergreen and Arborvitae while constructing a driveway in the Easement Area. PAF ¶¶ 33, 35-38. 





 20. The roots of the Spruce Tree were damaged by Defendants causing dieback of its branches. CSMF ¶ 7. 





 21. The Weeping Evergreen was removed in its entirety by Defendants. CSMF ¶ 8. 





 22. Lateral limbs, a large leader and other branches were cut from the Arborvitae by Defendants and their roots were damaged. Def. App. Ex. 5 at pp. 90-92; PAF ¶ 38. 





 23. The cutting of branches, leaders, roots, and excavation of the driveway by Defendants occurred within the Easement Area. CSMF ¶ 10. 





STANDARD OF REVIEW 





 Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





DISCUSSION 





 Defendants frame the issue to be resolved as follows: whether the Defendants were prohibited from cutting branches, roots or leaders or from performing excavation work within the Easement Area. Ms. Smith seeks a somewhat more detailed determination, asking this court to determine: (1) the scope of Ms. Smith's rights under the 1997 Easement; (2) whether Defendants' activities within the Easement Area exceeded the scope of their permissible use thereof; and (3) whether Ms. Smith is entitled to damages for the trees harmed during construction of the driveway pursuant to G. L. c. 247, § 7. Synthesizing the issues presented by both parties, the court will first address the parties' respective rights and restrictions under the 1997 Easement, and will then determine whether Ms. Smith is entitled to damages under G. L. c. 247, § 7, Count I, or for alleged trespass, Count II. 





Scope of the 1997 Easement 





 Both parties ask this court to determine the scope of the 1997 Easement. The Defendants acknowledge that the 1997 Easement allows Ms. Smith access to Lot 5C to maintain the arborvitae on Lot 3A, but otherwise argue that Mr. Silva is free to use Lot 5C for any other purposes which do not interfere with Ms. Smith's right of access. In response, Ms. Smith claims that the 1997 Easement prevents anyone (apart from Ms. Smith, her heirs, successors-in-title or assigns) from using the Easement Area for any purpose, a position that she held consistently throughout this litigation until recently. [Note 4] 





 When dealing with an express easement, the starting point of the analysis is the language of the grant. "'The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances.'" Patterson v. Paul, 448 Mass. 658 , 665 (2007), quoting Sheftel v. Lebel, 44 Mass. App. Ct. 175 , 179 (1998). "It follows that the same considerations govern [the] interpretation of an easement created by deed." Id. When "the language of the easement is 'clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.'" Westchester Assocs. v. Boston Edison Co., 47 Mass. App. Ct. 133 , 136 (1999), quoting Panikowski v. Giroux, 272 Mass. 580 , 583 (1930). "A term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning." Suffolk Constr. Co. v. Ill. Union Ins. Co., 80 Mass. App. Ct. 90 , 94 (2011). 





 Here, the express grant in the 1997 Easement is unambiguous: the "easement may be used by the grantor, her successors in title, heirs and assigns, for purposes of maintaining and up keeping the arbor vitae as may grow on Lot 3A, along that line." This grant permits Ms. Smith to enter Lot 5C to maintain arborvitae growing on her Lot 3A. There is nothing in this language to suggest that Ms. Smith was granted the right to grow arborvitae on Lot 5C. As the language of the grant is clear, this court may not look beyond it. Were the court otherwise inclined, Ms. Smith's present averments as to her intent (that she intended the easement to prevent Defendants or their predecessors-in-title from cutting or trimming branches or "doing anything within [the] easement area," Def. App. Ex. 5 at p. 122, ll. 1-10 and p. 124, ll. 6-10) would in any event be inadmissible, the relevant evidence being the language of the grant and the circumstances attendant to its creation in 1997. In sum, the 1997 Easement grants to Ms. Smith, her successors in-title, heirs and assigns the limited right to enter the Easement Area for the purpose of maintenance and upkeep of the arborvitae that grow on Lot 3A. Mr. Silva, as the owner of the servient estate, "'retains the use of his land for all purposes except such as are inconsistent with the right granted to the dominant owner.' Butler v. Haley Greystone Corp., 352 Mass. 252 , 258, 224 N.E.2d 683 (1967), quoting Merry v. Priest, 276 Mass. 592 , 600, 177 N.E. 673 (1931)." Patterson, 448 Mass. at 666. 





 Ms. Smith further contends that that 1997 Easement is negative in nature, and that it is therefore unlawful for Defendants to use the Easement Area as the 1997 Easement "restricted use of the easement to Plaintiff (Grantor), [and Plaintiff's] heirs and assigns, [and] made it lawful only for Plaintiff, [Plaintiff's] heirs, successors-in-title or assigns to use the easement." Plaintiff's Opp. at p. 6. "[A] negative easement restricts the uses that can be made of property." Patterson, 448 Mass. at 663, citing Restatement (Third) of Property (Servitudes) § 1.2 comment a, at 13 (2000). Relevant here, "the holder of such a [negative easement] has no right to use the land on which he holds the restriction as if he would if he held an affirmative easement." Labounty v. Vickers, 352 Mass. 337 , 347-348 (1967). In contrast, "[a]n affirmative easement 'creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.'" Patterson, 448 Mass. at 663, quoting Restatement (Third) of Property (Servitudes) § 1.2(1) (2000). 





 The language of the 1997 Easement contains the defining characteristics of an affirmative easement, as it confers on Ms. Smith the affirmative right to enter Mr. Silva's property "for purposes of maintaining and up keeping the arbor vitae as may grow on Lot 3A." Notably, the 1997 Easement specifically grants to Ms. Smith the right to enter Lot 5C and contains no language restricting the uses that Mr. Silva may make of Lot 5C. [Note 5] Accordingly, the 1997 Easement is an affirmative easement, and does not prohibit the Defendants from using the Easement Area. Rather, Mr. Silva's obligations under the 1997 Easement are limited to not interfering with Ms. Smith's maintenance and upkeep of the arborvitae that grow on Lot 3A. See Patterson, supra. 





Trespass to Trees under G. L. c. 242, § 7 





 With Ms. Smith's rights under the 1997 Easement determined, those rights must be squared with Mr. Silva's rights as the owner in fee of Lot 5C. Ms. Smith alleges that Defendants' cutting of limbs and roots within the Easement Area constituted a violation of G. L. c. 242, § 7, which in pertinent part states: 





 A person who without license willfully cuts down ... or otherwise destroys trees ... on the land of another shall be liable to the owner in tort for three times the amount of the damages assessed therefor, but if it was found that the defendant had good reason to believe that the land on which the trespass was committed was his own or that he was otherwise lawfully authorized to do the acts complained of, he shall be liable for single damages only. 





As a predicate to determining whether § 7 has been violated, it must be determined on whose property the damaged or destroyed trees are (or were) located. In Massachusetts, ownership of a tree is determined by the location of its trunk. Levine v. Black, 312 Mass. 242 , 243 (1942). However, under the so-called Massachusetts Rule, abutting property owners are permitted to cut back overhanging or intruding branches and roots on their property of a tree whose trunk is located on a neighboring property. Id. at 243; see also Shiel v. Rowell, 480 Mass. 106 , 112, (2018) (reaffirming the Massachusetts Rule in holding that "[o]ur resolution has been and remains to authorize the cutting back of overhanging branches and intruding roots."); Michalson v. Nutting, 275 Mass. 232 , 234 (1931). 





 The record establishes that the Weeping Evergreen was located entirely within the Easement Area, i.e., Lot 5C, and that the Spruce Tree and Arborvitae's trunks are located on Lot 3A. Accordingly, Defendants did not violate § 7 when they removed the Weeping Evergreen. Turning to the Spruce Tree and Arborvitae, Ms. Smith has consistently maintained that the damage to the Spruce Tree and Arborvitae occurred within the Easement Area. See n. 4, supra. As the Easement Area is fully located within Mr. Silva's Lot 5C, not "land of another," and, as determined above, the 1997 Easement did not restrict Mr. Silva's activities on Lot 5C except insofar as they might interfere with Ms. Smith's right to maintain arborvitae on Lot 3A, Mr. Silva has the right to cut back any overhanging branches and intruding roots within the Easement Area. Thus, in cutting roots and branches on Lot 5C, Mr. Silva was well within the boundaries of the established law. Ms. Smith is not entitled to damages under § 7. 





Trespass and Continuing Trespass 





 Regarding Ms. Smith's trespass claim, an essential element of that claim is Ms. Smith's possession of the land on which the Defendants allegedly trespassed. Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327 , 333 (2005), citing New England Box Co. v. C & R Constr. Co., 313 Mass. 696 , 707 (1943) (plaintiff must prove she is in possession of property); Gage v. Westfield, 26 Mass. App. Ct. 681 , 695 n. 8 (1988) (trespasser is one "who enters or remains upon land in the possession of another without a privilege to do so"), quoting from Restatement (Second) of Torts § 329 (1965); id. § 158 ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove"). By definition, an easement is a nonpossessory interest in real estate. M.P.M Builders, L.L.C. v. Dwyer, 442 Mass. 87 , 92 (2004) ("An easement is by definition a limited, nonpossessory interest in realty. See Restatement (Third) of Property (Servitudes) § 1.2 (2000) ('An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement'); 3 Powell, Real Property § 405 at 34-13 (P. Rohan ed. 1992) ('The requirement that the easement involve only a limited use or enjoyment of the servient tenement is a corollary of the nonpossessory character of the interest' [emphasis in original])."). Accordingly, Ms. Smith's trespass claim cannot succeed.





CONCLUSION 





 Based on the undisputed facts and for the foregoing reasons, the Motion is ALLOWED. Judgment shall enter dismissing Counts I and II of the Amended Complaint with prejudice. On Count III of the Amended Complaint, judgment shall enter declaring that the 1997 Easement grants to Ms. Smith, her successors-in-title, heirs and assigns the limited right to enter the Easement Area for the purpose of maintenance and upkeep of the arborvitae that grow on Lot 3A and that Mr. Silva, as the owner of the servient estate, retains the use of his land for all purposes except such as are inconsistent with the right granted to Ms. Smith. More particularly, Mr. Silva and his agents may remove and cut back trees within the Easement Area to the extent that such activities do not interfere with Ms. Smith's right to use the Easement Area for purposes of maintaining and upkeep of arborvitae that grow on Lot 3A. 





 SO ORDERED 





FOOTNOTES
[Note 1] Although entitled Plaintiff's First Amended Complaint, the Amended Complaint is Ms. Smith's second amended complaint, the first amended complaint having been filed on May 9, 2019 and having been the subject of a motion to dismiss that was heard on July 23, 2019. The Amended Complaint added a request for declaratory relief, which provided the jurisdictional basis for this court to hear the trespass claims set forth therein and in the earlier amended complaint. See Ritter v. Bergmann, 72 Mass. App. Ct. 296 , 302 (2008) (Land Court has jurisdiction to award damages on tort-based theory where damages are ancillary to claims related to any right, title or interest in land). 

[Note 2] The facts set forth in the Concise Statement Of Facts Pursuant To Land Court Rule 4 In Support Of Motion For Summary Judgment Of Defendants, Dinis Silva, Silvascapes, LLC And Masterscapes, LLC ("CSMF"), to the extent that Ms. Smith's responses thereto do not comply with Land Court Rule 4, are deemed to have been admitted. See Rule 4 of the Rules of the Land Court (2005). 

[Note 3] It appears that the language in the 1997 Deed - "or assigns and that any conveyance hereafter made by the grantees, their successors-in-title," - was inadvertently omitted from the sixth and seventh lines of this paragraph. 

[Note 4] In the Amended Complaint, Ms. Smith alleged: that "[t]he defendant intentionally, willfully, and continuously trespassed on plaintiff's easement, causing serious damage to the southeastern side of the arborvitae trees," Def. App. Ex. 1, ¶ 34; that "[t]he plaintiff holds an interest in a 10' foot [sic] wide area of land on Lot 5C" and that "[t]he defendants' ... made intentional, unlawful, unauthorized, and continuous entries on plaintiff's land, constituting a trespass, and a continuous trespass," id. at ¶ 42; and that "[w]ithout authority the defendants' [sic] willfully and maliciously damaged plaintiff's property interests in the land located on Lot 5C." Id. at ¶ 44. At her deposition, Ms. Smith testified repeatedly as to the defendants' activities within the Easement Area. As examples, Ms. Smith testified that the defendants illegally entered onto her easement and that it was her belief that they were not supposed to go onto the Easement Area at all, Def. App. Ex. 5 at p. 111, ll. 1-15; that Mr. Silva trespassed onto her land when he entered the Easement Area to cut back the Arborvitae, id. at p. 118, ll. 8-20; and that the 1997 Easement prevented Mr. Silva from doing anything within the Easement Area. Id. at p. 124, ll. 6-10. 

[Note 5] As stated by the Patterson court, quoting 4 R. Powell, Real Property § 34.02[2][c] (M. Wolf ed. 2000) at 34-16: "'A negative easement consists solely of a veto power. The easement owner has ... the power to prevent the servient owner from doing, on his or her premises, acts that, but for the easement, the servient owner would be privileged to do.'" Patterson, 448 Mass. at 663. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.